Mark COLEMAN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–0002–CR–59.

Supreme Court of Indiana.

July 5, 2001.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Mark Coleman was convicted of murder for killing another man with a sawed-off shotgun. He argues that (1) his non-custodial, taped-recorded confession was improperly admitted, and (2) prosecutorial misconduct occurred at trial resulting in unfair prejudice. Given overwhelming independent evidence of guilt, we find any error in either respect to have been harmless and affirm.

### Background

The facts most favorable to the judgment show that in the early morning hours on January 25, 1997, Defendant Mark Coleman and Mark Burris were in an alley behind an apartment building. Valerie Lomax, a resident of the building, saw Burris hand over a sawed-off shotgun to Defendant. Lomax went back inside her home, and shortly thereafter, she heard "a man pleading for his life" and then heard a gunshot. Later that morning, police officers arrived at the scene and identified the victim as Joseph Hughes. Hughes had died from a close range shotgun wound to the chest.

Lomax's neighbor, Samella King, recalled that just before the gunshot, she heard three voices—two of which she recognized as those of Defendant and Mark Burris. King testified that a few days after the murder, Defendant said to her, "I know you know I'm the one that either shot or killed the guy on the side of your house." (R. at 262.)

Charlene Whitlock, a friend of Defendant's, contacted police authorities concerning the murder. Whitlock agreed to work as a confidential informant in exchange for leniency of her pending theft charges. On February 12, 1997, police officers equipped Whitlock with a wire and placed a tape recorder under the seat of her car. Shortly thereafter, Whitlock and her husband, Floyd Whitlock ("Eddie"), picked up Defendant. They pooled their money together and Defendant bought a rock of crack. During the taped conversation, they smoked a small amount of crack and got "high." Defendant confessed that he had shot Hughes in the chest with a shotgun. He also admitted that after he "blasted" Hughes, he "beat the shit out him." (R. at 334, 338.) The taped conversation in the car was monitored by Detective Marcus Kennedy and intelligence officers. At what would be Defendant's second trial, the tape was played for the jury over Defendant's objection.

The State charged Defendant with Murder [1] (Count I), Felony Murder [2] (Count II), and Robbery [3] (Count III). A jury acquitted Defendant on the charges of felony murder and robbery, but was unable to reach a verdict on the murder charge. After a second trial, a different jury convicted Defendant of murder. The trial court then sentenced Defendant to 60 years in prison.

We will recite additional facts as necessary.

## Discussion

### I

■ Defendant contends that the trial court erred when it admitted the taped-recorded conversation between Charlene Whitlock, her husband, and him.

During the trial but outside the presence of the jury, the State sought to introduce the taped conversation in which Defendant admitted to killing Joseph Hughes. Defendant objected to its admission only on the basis that the recording was of poor quality and would confuse the jury. The court listened to the audiotape to determine its clarity and found it sufficiently intelligible. The court summarized its findings as follows:

> [T]he beginning portion of the tape is unintelligible, except for it's clear to me from the portions I can get, that it's really about the set up of the wire and ... matters that [were not] directly pertinent to [the day of the murder].... The portion which is pertinent to this case is of sufficient quality to be heard and understood by the trier of fact. I don't think the rest of the tape is such that would lead the jury to speculate as to what is being said.... The Court finds that that's not unintelligible.

(R. at 287.)

The trial court made no findings as to the voluntariness of Defendant's confession. The court allowed the entire audiotape to be played before the jury over Defendant's standing objection.

■ Defendant argues that the trial court erred in finding that the tape was intelligible and thus, it should have been excluded. To properly admit a tape recording made in a non-custodial setting, the following foundational requirements must be established: (1) the recording must be authentic and correct; (2) the testimony elicited must have been freely and voluntarily made; (3) the recording must not contain matter otherwise not ad-

---

**1.** Ind.Code § 35–42–1–1(1) (1993).

**2.** *Id.* § 35–42–1–1(2).

**3.** *Id.* § 35–42–5–1.

missible into evidence; and (4) the recording must be of such clarity as to be intelligible and enlightening to the jury. *See Lehman v. State,* 730 N.E.2d 701, 703 (Ind. 2000); *McCollum v. State,* 582 N.E.2d 804, 811 (Ind.1991), *reh'g denied; cf. Freeman v. State,* 541 N.E.2d 533, 538 (Ind.1989). It is within the trial court's discretion to determine whether such recordings meet these criteria. *See Lehman,* 730 N.E.2d at 703.

Our independent review of the audiotape leads us to conclude that the trial court did not abuse its discretion in allowing the tape into evidence. As we stated recently, "The standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a wire transmitter." *See Kidd v. State,* 738 N.E.2d 1039, 1042 (Ind.2000) (citing *Fassoth v. State,* 525 N.E.2d 318, 324 (Ind.1988)), *reh'g denied.* This principle applies here. At the beginning of the tape, there is background noise, the voices are mumbled, and there is the sounding of a car door slamming. Thus, we agree with the trial court's finding that the beginning of the tape is unintelligible. But the trial court gave Defendant the option to leave out this portion of the tape. In response, Defendant nevertheless said, "the entire tape should be played." After listening to the remaining tape, it is sufficiently clear that Defendant was confessing to committing murder. We find no error.

■ Defendant makes an additional argument on appeal supporting his claim that the tape should have been excluded.

He argues that his recorded statements were made involuntarily because he was under the influence of crack cocaine during the conversation. Defendant further maintains that the informant "had gotten permission and talked with police about using drugs," thus the officers knew that the informant intended to smoke cocaine with him during the taped conversation.[4] Appellant's Br. at 5 (citing R. at 319.) As such, Defendant's argues, his recorded murder confession was a product of improper influence of crack cocaine induced by police officers and should have therefore been excluded.

■ As the State points out, Defendant has failed to preserve this issue for review. When cross-examining Detective Marcus Kennedy, Defendant did allude to the fact that confessions given under the influence of drugs or alcohol have been found to be inadmissible. However, Defendant made no objection to the effect that his consumption of cocaine rendered his statements involuntary or that the police used improper tactics to obtain a confession. Rather, his only objection at trial was that the tape was unintelligible. A defendant cannot argue one ground when objecting to the admissibility of a confession at trial and then argue another ground on appeal. *See Carroll v. State,* 438 N.E.2d 745, 748 (Ind. 1982). Defendant has waived this argument for appellate review.

■ In any event, if there was error in admitting the taped confession, it was harmless beyond a reasonable doubt be-

4. The facts are in dispute as to police involvement concerning the use of drugs during the recorded confession. Whitlock, the confidential informant, testified that while the police equipped her with a wire, she obtained police permission to smoke cocaine during the recorded conversation. Thus, according to Whitlock, the police authorities were fully aware of her intentions to smoke crack while trying to get him to confess to the killing. On the other hand, Detective Kennedy denied having knowledge that there was prior police approval for drug use. Kennedy testified that he was not present at the time the officers equipped Whitlock with the wire and that he did not see anyone purchase drugs during the conversation.

cause there was overwhelming independent evidence that Defendant was the perpetrator who killed Hughes. A wrongful introduction of an involuntary confession is subject to a constitutional harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 296, 306–12, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Under the harmless error analysis, this Court must determine whether the State has "met its burden of demonstrating that the admission of the confession ... did not contribute to [the defendant's] conviction." *Id.* The content of the taped conversation was merely cumulative of Whitlock's trial testimony regarding Defendant's admission to committing the murder. According to Whitlock's testimony, she and Defendant talked shortly after the murder occurred. During this non-recorded conversation, Defendant admitted to killing Hughes and to discarding the murder weapon. Whitlock testified further that Defendant also expressed fear that Samella King saw him outside her apartment and that she would be able to identify him. This first conversation between Whitlock and Defendant was not taped and Defendant made no objection to this trial testimony. In addition, Whitlock's trial testimony also corroborated the testimony of Samella King and Victoria Lomax concerning the circumstances surrounding the murder. King testified that just before the gunshot, she heard three voices—two of which she recognized as those of Defendant and Mark Burris. King also testified that a few days after the murder, Defendant admitted to her, "I know you know I'm the one that either shot or killed the guy on the side of your house." (R. at 262.) Further, Lomax testified that she saw Burris hand over a sawed-off shotgun to Defendant just minutes before she heard a gunshot. According to Lomax's testimony, she went back inside her home, and shortly thereafter, she heard "a man pleading

for his life" and then heard a gunshot. (R. at 198.)

The State presented other evidence that Defendant committed the killing aside from the taped confession. As such, we conclude that the State demonstrated that the admission of the taped confession did not contribute to Defendant's conviction. *See Fassoth v. State,* 525 N.E.2d at 324 (finding no reversible error where the content of a taped recorded conversation was merely cumulative of the informant's trial testimony); *Roller v. State,* 602 N.E.2d 165, 171 (Ind.Ct.App.1992) (holding that the trial court's admission of an unintelligible audio-tape was harmless error where other evidence corroborated the informant's testimony), *transfer denied.*

## II

■ Defendant contends that the trial court committed reversible error when it denied his motion for a mistrial. He claims that the prosecutor twice committed misconduct during closing argument, which "had a probable persuasive effect on the jury's decision." Appellant's Br. at 6.

■ In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *See Wisehart v. State,* 693 N.E.2d 23, 57 (Ind.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999); *Wright v. State,* 690 N.E.2d 1098, 1110 (Ind.1997), *reh'g denied.* The "gravity of peril" is measured by the " 'probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct.' " *Wisehart,* 693 N.E.2d at 57 (quoting *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996) (citing in turn

*Bradley v. State,* 649 N.E.2d 100, 107–08 (Ind.1995), *reh'g denied.*)). The denial of a mistrial lies within the sound discretion of the trial court, and will be reversed only upon a finding of an abuse of discretion. *See Canaan v. State,* 541 N.E.2d 894, 908 (Ind.1989), *cert. denied,* 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 185 (1990).

In this case, during the prosecuting attorney's closing argument, the following colloquy ensued:

Prosecutor: ... [A]s you look at the transcript, the *Defendant talks about a lot of other things that gives you an idea of what kind of person the Defendant is,* up through the first eight pages.

Defendant: Your Honor, I object. Move to strike, and I ask the court to admonish the prosecutor for making references in his closing argument to 'what kind of person the Defendant is.' That's highly inappropriate. He's asking this jury to convict him based on character, instead of based on the evidence. I strenuously object to that.

Court: Okay, I'll grant the objection. We'll strike characterization, or the reference to the Defendant's nature....

Prosecutor: What else are we to draw from the conclusion, 'that's when I told her I'd break her motherfucking jaw.' *This is the kind of person we're talking about.* ...

Defendant: Your Honor, I object to him saying 'This is the kind of person that we're talking about.' That ... I want to approach the bench, if I may.

(R. at 484–85) (emphases added) (quotations in original).

Outside the jury's presence, the court and counsel from both sides engaged in a discussion during which Defendant moved for a mistrial on grounds that the prosecutor repeatedly referred to his character despite his sustained objection. The court denied Defendant's request for a mistrial. The court found that the prosecutor's remark was an "inconsequential remark" and that it was "fair to comment on [Defendant's] demeanor in the tape." (R. at 487.) Defendant declined the court's offer to admonish the jury.

Defendant argues on appeal that it was improper for the prosecutor to comment on his character because he neither testified nor submitted any character evidence. Defendant claims that the prosecutor's remarks "clearly indicated to the jury that [he] was violent and a batterer and thus was more likely to have committed murder because he was bad person." Appellant's Br. at 12.

" 'It is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt.' " *Wisehart,* 693 N.E.2d at 59 (quoting *Maldonado v. State,* 265 Ind. 492, 500, 355 N.E.2d 843, 849 (1976)). However, as we found in Part I, *supra,* any error in this regard was harmless because there was overwhelming independent evidence of Defendant's guilt.

### Conclusion

We affirm the trial court's judgment.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.