# FOR PUBLICATION



FILED
Sep 30 2013, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**THOMAS W. VANES**
Merrillville, Indiana

**MARK A. BATES**
Schererville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID M. GREEN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1210-PC-418 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

### APPEAL FROM LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-0905-PC-4

**September 30, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

David M. Green appeals the denial of his petition for post-conviction relief.  He argues his trial counsel was ineffective because counsel did not object to the empaneling of an anonymous jury at Green's murder trial.  We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

We stated the facts underlying Green's convictions in his direct appeal:

> On November 2, 2004, Green visited his estranged wife Stacy and their two children, E.G. and R.G., at Stacy's home in Griffith, Indiana.  Stacy was thirty-nine weeks pregnant with the couple's third child, whom she had named Nathaniel.
>
> After the children were in bed, Green and Stacy walked into the kitchen and Stacy began to clean up the remains of the evening meal.  Green decided to confess that he had been involved with another woman.  At some point, Green kicked Stacy several times, lacerating her liver.  He then strangled her, apparently with an aluminum broomstick, and stabbed her in the neck with a knife.  Stacy sustained a two-inch wide, four-inch deep laceration to her neck, which severed her right carotid artery and fractured her cervical vertebrae.  Stacy and her unborn son both died.
>
> Green washed his arm, and washed and dried the knife and placed it into a kitchen drawer.  He drove to a convenience market to buy Gatorade, and then drove to the residence of Sarah Dechene ("Dechene"), where he spent the night.  The next morning, Green telephoned Stacy's home and spoke with his five-year-old son E.G.  E.G. told Green that Stacy was lying in "cherry juice next to a broom." (Tr. 215.)  Green summoned the police.  When the police officers arrived, they found Stacy dead on her kitchen floor next to a bloody and broken aluminum broomstick.  A kitchen window was open and the screen had been cut.
>
> In Green's initial conversations with police, he first omitted any discussion of an altercation and later denied that there had been an altercation.  Eventually, Green reported that "something bad has happened" and that he "needed to tell" the officers about it after speaking with his father. (Tr. 458.)  After speaking with his father, Green did not answer further police questions.
>
> On November 16, 2004, Green agreed to speak with the police.  He did so after receiving written assurances from the Lake County Prosecutor that the State would not seek to have the death penalty imposed upon him if he were

---

[1] We held oral argument in this case on August 20, 2013, in the Court of Appeals Courtroom at the Indiana Statehouse.  We comment counsel on their excellent advocacy.

ultimately charged with Stacy's and Nathaniel's murders. During the interview, Green admitted that he had been involved in an altercation with Stacy. He stated that Stacy had become angered upon learning of his affair with Dechene, and had come after him with a knife. He claimed that he put his arm around Stacy's neck and squeezed until he felt something pop, but he didn't know how she had been stabbed. He denied having the knife in his hand prior to picking it up to clean it.

On November 17, 2004, the State charged Green with two counts of murder. On August 9, 2006, the trial court denied Green's motion to suppress his November 16, 2004 statement to police. On August 18, 2006, a jury found Green guilty as charged.

On September 22, 2006, the trial court sentenced Green to two consecutive terms of forty-five years imprisonment.

*Green v. State*, 870 N.E.2d 560, 563-65 (Ind. Ct. App. 2007), *trans. granted* 878 N.E.2d 215 (Ind. 2007), *trans. order vacated* 877 N.E.2d 467 (Ind. 2007).

Prior to Green's trial, the Lake County Court Criminal Division, "adopted a *voir dire* policy whereby the names of potential jurors would be eliminated from the jury questionnaires and names would not be used in open court or on the record." (App at 153.) Instead, the jurors were to be referred to by number and "the names of the jurors were not provided to trial counsel and the defendant." (PCR Ex. 2.) The policy "was adopted by all judges of the Lake Superior Court in response to jury privacy concerns in having their names used in a public forum . . . [which concerns were] particularly heightened in this Internet world." (App. at 153.) The jury for Green's trial was empaneled in accordance with this policy. Green's trial counsel did not object to the anonymous jury, nor was the issue raised in Green's direct appeal.

On May 21, 2009, Green filed a petition for post-conviction relief (PCR) alleging trial counsel should have objected to the empaneling of an anonymous jury and appellate counsel

3

should have raised the issue on direct appeal.[2] On September 5, 2012, after a hearing, the

post-conviction court denied Green's petition. The court concluded:

> 10. At the time that Green's trial took place, no Indiana case law addressed the constitutionality of an anonymous jury. However, federal precedent existed. *United States v. Mansoori*, 304 F.3rd 635, 650 (7th Cir. 2002) (citing *United States v. Crockett*, 979 F.2d 1204, 1215 (7th Cir. 1992) and *United States v. Paccione*, 949 F.2d 1183, 1192 (2nd Cir. 1991)), *cert denied*, 505 U.S. 1220 (1992); *United States v. Krout*, 66 F.3rd 1420, 1427 (5th Cir. 1995). In general the federal courts held that the use of an anonymous jury was an extreme measure only to be employed when the safety of the jurors was seriously at risk or in other unique circumstances. *Id*. For example, an anonymous jury might be warranted if the defendant is shown to participate in organized crime or any other group with the ability to harm jurors; if the defendant has previously tried to interfere with the judicial process generally or witnesses specifically; if the defendant is facing a potentially lengthy sentence of incarceration; or [if] the case has inspired extensive pretrial publicity that might logically culminate in the exposure of jurors' names and the subjection to harassment or intimidation. *See Krout*, 66 F.3rd at 1427. There is no evidence that any of these factors existed in Green's case except the potential for a lengthy sentence of incarceration.
>
> 11. The primary constitutional right at risk from the use of an anonymous jury is the right to be presumed innocent of the charges, a principal [sic] inferred from the basic rights to due process and equal protection guaranteed under the Fourteenth Amendment.
>
> 12. No trial strategy or litigation tactic guided defense counsel's failure to object to the anonymous jury process in Green's case. As counsel frankly put it, he simply did not know to object. He was not familiar with the body of federal cases addressing the issue and was not prepared to face the issue. The Lake County courts had never withheld jurors' names in the past and counsel was surprised by the novel procedure just moments before the voir dire was about to begin. Furthermore, the court did not explain to the venire the reason why names were not provided to counsel. Therefore, the court did not say anything that impugned the presumption of innocence and might have inspired trial counsel to object. Finally the practice of withholding jurors' names had apparently been in place for some months prior to Green's trial, albeit unknown to [defense counsel]. There is no evidence that the prevailing professional norm among Lake County attorneys was to object to the court's

---

[2] Green does not appeal the post-conviction court's decision that his appellate counsel rendered effective assistance.

new procedure. Under these circumstances, we are not persuaded that counsel's failure to object fell below prevailing professional norms of practice.

13. Even if counsel's acquiescence to the anonymous jury procedure fell below prevailing professional norms, Green has failed to show that he was actually prejudiced thereby.

14. If this were a direct appeal, the State would bear the burden to show that the trial court's use of an anonymous jury was not an abuse of discretion. *See, e.g., Major v. State*, 873 N.E.2d 1120, supra. But this is not a direct appeal. Unlike Carl Major, Green collaterally appeals his conviction. Therefore, he bears the burden to show that the use of the anonymous jury in fact prejudiced him in order to prove ineffective assistance of counsel and gain relief. *Cf. Lingler v. State*, 640 N.E.2d 392 (Ind. Ct. App. 1994), citing *Weathorford v. State*, 619 N.E.2d 915, 918 (Ind. 1993) (burden of proof in post-conviction proceedings rests with the defendant/petitioner).

15. Ind. Evid. Rule 606 governs the permissible limits of investigation into a juror's service and experience. The [R]ule states, in relevant part:

> (b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

16. Green has obtained the names of the jurors who appeared for his trial along with their corresponding juror numbers. (Goldman disposition, [E]xh. 2). Although jurors are prohibited from certain areas of testimony under Rule 606, the fact that the jurors' names are known provides an avenue to discover the relationships counsel might have discovered during voir dire. No evidence has been presented to show that any juror was related, biologically or emotionally, to any witness or party to the proceedings. The only evidence that an impaneled juror had knowledge of a family member of the victim is on the face of the record. Juror 230 revealed that she knew the victim's grandmother; the relationship was explored on the record and neither party moved to strike her from the jury. All other arguments of prejudice address potential or

5

speculative harm. There is no evidence that Green was actually prejudiced by his attorney's failure to object to the anonymous jury.

17.     We conclude that Green was not denied effective assistance of counsel.

(*Id*. at 113-16.)

## DISCUSSION AND DECISION

Post-conviction proceedings provide defendants with the opportunity to raise issues that were not available on direct appeal or were not known at the time of the trial. *State v. Hernandez*, 910 N.E.2d 213, 216 (Ind. 2009). Claims available on direct appeal but not presented are not available for post-conviction review. *Id*. Thus, not all issues are available in a post-conviction proceeding; challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id*.; Post Conviction Rule 1(1). A petitioner for post-conviction relief cannot avoid application of the waiver doctrine by asserting fundamental error. *Id*. Rather, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Id*.

A successful claim of ineffective assistance of trial counsel must satisfy two components. First, the defendant must show deficient performance - representation that fell below an objective standard of reasonableness involving errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied*. Second, the defendant must show prejudice -- a reasonable probability (*i.e.,* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id*.

We need not consider whether counsel's performance fell below the objective standard if that performance would have not changed the outcome of the proceeding. *Strickland*, 466 U.S. at 687. "Prejudice occurs when the defendant demonstrates 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). To demonstrate ineffective assistance of counsel under *Strickland*, the defendant must show "actual" prejudice. *Conner v. State*, 711 N.E.2d 1238, 1254 (Ind. 1999).

Green argues he was prejudiced because he was denied his right to a jury of "known individuals." (Br. of Appellant at 14) (quoting *United States v. Sanchez*, 74 F.3d 562, 565 (5th Cir. 1996)). He contends he was deprived of the information he needed to make peremptory challenges because he could not compare the jurors' names to those known to him and counsel.[3] In addition, Green argues the empaneling of an anonymous jury deprived

---

[3] Green asserts the Deputy Prosecuting Attorney had a list of the names of the jurors in addition to their numbers. The PCR court found:

> The Deputy Prosecuting Attorney who tried Green's case believed that he had a jury list that included the jury's names. However, based on our review of all of the evidence presented in these proceedings, we find that it is possible, though unlikely, that the State was given a list different than [sic] the list given to the defense.

(App. at 109.) During oral argument, Green argued this finding was "clear error" because it was not supported by evidence in the record. Green v. State Oral Argument, 9:19–10:10 https://mycourts.in.gov/arguments/default.aspx?&id=1561&view=detail&yr=&when=&page=1&court=app&search=&direction=%20ASC&future=False&sort=&judge=&county=&admin=False&pageSize=20 (last accessed August 21, 2013). Regarding clear error, our Indiana Supreme Court has held:

> [A]s to factual determinations "[w]e reverse only upon a showing of clear error -- that which leaves us with a definite and firm conviction that a mistake has been made." . . . "[C]lear error" review requires the appellate court to assess whether "there is any way the trial court could have reached its decision." In this review, we defer substantially to findings of fact but not to conclusions of law.

*State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997) (citations omitted), *reh'g denied*. During Green's PCR hearing, the State presented evidence from the Deputy Prosecuting Attorney, who indicated he could not

7

him of his Fourteenth Amendment right to be presumed innocent because "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected[.]" (Br. of Appellant at 15) (quoting *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cr. 1994)). Finally, Green contends prejudice can be presumed for purposes of his ineffective assistance of counsel claims because he did not receive a fair trial.

Green has not demonstrated he experienced "actual prejudice," which is required to prevail under *Strickland* analysis. *See Conner*, 711 N.E.2d at 1254 (requiring showing of "actual prejudice"). Green received the jurors' names as a part of discovery for his post-conviction case, but he did not present evidence "that any juror was related, biologically or emotionally, to any witness or party to the proceedings." (App. at 115.) As Green needed to demonstrate "actual" prejudice, his argument fails. *See Conner*, 711 N.E.2d at 1254 (requiring the showing of "actual" prejudice).

Regarding the presumption of innocence, the jury in Green's trial was instructed multiple times at the beginning and end of trial regarding the presumption of Green's innocence. Additionally, the evidence against Green was overwhelming. As we stated in our opinion on direct appeal:

---

"definitively" recall if he had a list of the juror's names during trial. (Tr. at 69.) The court administrator for the Lake Superior Court, stated in a deposition he would take the juror list with juror names, and the judge would "fold[] it over so that the names were not visible, place it on a copy machine, run copies of it and then the lawyers would receive the copies, which did not contain the [juror's] names." (App. at 133.) Based on that evidence, we cannot say the PCR court's finding was clear error.

In Green's initial conversations with police, he first omitted any discussion of an altercation and later denied that there had been an altercation. Eventually, Green reported that "something bad has happened" and that he "needed to tell" the officers about it after speaking with his father. (Tr. 458.) After speaking with his father, Green did not answer further police questions.

On November 16, 2004, Green agreed to speak with the police. He did so after receiving written assurances from the Lake County Prosecutor that the State would not seek to have the death penalty imposed upon him if he were ultimately charged with Stacy's and Nathaniel's murders. During the interview, Green admitted that he had been involved in an altercation with Stacy. He stated that Stacy had become angered upon learning of his affair with Dechene, and had come after him with a knife. He claimed that he put his arm around Stacy's neck and squeezed until he felt something pop, but he didn't know how she had been stabbed. He denied having the knife in his hand prior to picking it up to clean it.

Green, 870 N.E.2d at 563-64. Also, the facts of the case tell us:

Green took painstaking steps to conceal Stacy's death. He washed the knife, dried it, and placed it into a drawer. He returned to Dechene's home and told her that he had dinner with his mother. He placed a call to Stacy's home the next morning, ostensibly to inquire as to her whereabouts. There is evidence that a window was left open and the screen cut, yet the damp leaves on the ground beneath the window were undisturbed. From this, the jury could infer that Green attempted to create the impression that an intruder attacked Stacy.

Finally, Green had given conflicting versions of the incident soon thereafter, alternately claiming that he had no altercation with Stacy, and that Stacy, nine months pregnant, was the aggressor in an altercation from which he could not retreat.

*Id*. at 565.

Based on the lack of evidence regarding actual prejudice Green experienced, the multiple instructions to the jury about the presumption of Green's innocence, and the overwhelming evidence against Green, Green has not demonstrated he received ineffective

assistance of trial counsel.  Accordingly, we affirm the denial of his petition for post-conviction relief.

Affirmed.

BAKER, J., and MATHIAS, J., concur.