**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**YVETTE M. LAPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GODFREY IKECHUKWU EGWU, JR.,          )
                                      )
    Appellant-Defendant,              )
                                      )
        vs.                           )          No.  82A01-1311-CR-510
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1303-FA-371

**June 23, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

During closing argument at appellant-defendant Godfrey Ikechukwu Egwu, Jr.'s trial for Dealing in Methamphetamine,[1] a class B felony, the deputy prosecutor made various comments about a particular witness's credibility. Although Egwu contends that the deputy prosecutor improperly vouched for the witness and, therefore, engaged in prosecutorial misconduct, Egwu did not object to the arguments, request an admonishment, or move for a mistrial. Thus, Egwu has waived his argument of prosecutorial misconduct. In fact, the comments that the deputy prosecutor made about the witness were supported by the evidence.

Thus, Egwu's claims under the fundamental error doctrine fail, and we conclude that the deputy prosecutor's comments did not constitute prosecutorial misconduct. As a result, we affirm the judgment of the trial court.

FACTS

Milligan and Egwu met sometime in 2011, while Egwu was manufacturing methamphetamine in Vanderburgh County. At some point, Egwu paid Milligan $40 for a box of pseudoephedrine, an ingredient that is used to make methamphetamine.

Sometime in January 2013, Milligan and Egwu moved in together. Milligan began purchasing boxes of pseudoephedrine from others so Egwu could continue manufacturing methamphetamine. Milligan would typically text the individual and inquire whether he or she would obtain a box of pseudoephedrine for her. Milligan

---

[1] Ind. Code § 35-48-4-1.1.

2

would then pass her purchases on to Egwu. He took the pills and crushed them, making them usable in the manufacturing process.

Milligan continued purchasing some of the boxes with her own money, and Egwu paid for the rest. Egwu and Milligan frequently texted each other about purchasing other precursors for methamphetamine production. On at least one occasion after Egwu bought the pseudoephedrine from Milligan and produced the methamphetamine, Milligan smoked some of the drug and sold the rest. Eventually, Milligan was smoking methamphetamine on a daily basis.

Egwu used several boxes of pseudoephedrine to produce methamphetamine, and would then give Milligan the remaining amount. Egwu repeated this process, and both times the amount of methamphetamine that Egwu gave to Milligan was between two and two-and-one-half grams. Milligan watched Egwu cook methamphetamine many times and she eventually learned how to manufacture the drug herself. After producing the methamphetamine, Milligan typically delivered the drug to other individuals and "waited around" to be paid in cash or in methamphetamine. Tr. p. 50-51.

On March 7, 2013, Egwu sent Milligan into a Walgreen pharmacy to purchase pseudoephedrine for him, but Milligan knew that she was over her "purchase limit" from that particular store. Tr. p. 53. However, Egwu attempted to have another acquaintance, Michael Norman, purchase the drug for him.

When Norman entered the store, Patrick McDonald, an Evansville detective assigned to the Methamphetamine Suppression Unit, was standing inside. Other officers

3

were present, as well, monitoring sales, and others were watching what was occurring in the parking lot. Norman completed the purchase, exited the store, and handed the pseudoephedrine to Egwu.

After Egwu let Norman out of his vehicle, he saw an individual that he knew by the name of William Young "flag him down." Tr. p. 56, 187-88. Young said that he noticed what Egwu and Norman had done and offered to sell him an additional box of pseudoephedrine that he had purchased for $50. The exchange occurred and one of the detectives who was stationed near the Walgreen's witnessed the transaction.

The police stopped Egwu's vehicle, and all of the occupants in the car were Mirandized. Milligan admitted to one of the detectives that she had gone to the pharmacy to purchase the pseudoephedrine, and that she had given Norman cash to purchase the drugs.

Egwu offered differing explanations as to how he had come to possess the drug. As part of the investigation, the officers who stopped the vehicle confiscated several cell phones from Egwu and Milligan. The police also found a box of pseudoephedrine, a receipt for that drug, and the box of Walgreen-brand pseudoephedrine that Detective McDonald saw Young purchase. Some marijuana paraphernalia and a small quantity of that drug were also seized.

Thereafter, the police obtained search warrants for Milligan's and Egwu's cell phones, which indicated whether the numerous texts involved regarding the sale of methamphetamine were incoming or outgoing. During an interview, Milligan admitted

4

to Detective McDonald that the quantity of methamphetamine that she received from Egwu exceeded three grams.

On March 30, 2013, the State charged Egwu with two counts of dealing in methamphetamine, a class A felony, conspiracy to commit dealing in methamphetamine, a class B felony, and several other drug charges. The State ultimately dismissed most of the charges, and only one count of dealing in methamphetamine and a single count of conspiracy to commit dealing in methamphetamine remained to be tried.

Prior to the commencement of Egwu's jury trial on September 4, 2013, the trial court gave the following preliminary instruction:

> The trial of this case will proceed as follows:
> First, the attorneys will have an opportunity to make opening statements. These statements are not evidence and should be considered only as a preview of what the attorneys expect the evidence will be.
> . . .
>
> When the evidence is completed, the attorneys may make final arguments. The final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.

Appellant's App. p. 148.

At the close of the evidence and after the defendant's oral motion for a judgment on the evidence, the trial court reduced the count of dealing in methamphetamine from a class A felony to a class B felony. Prior to final arguments, the trial court instructed the jury as follows:

> The unsworn statements or comment of counsel on either side of the case should not be considered as evidence in this case. It is your duty to determine the facts

5

from the testimony and evidence admitted by the Court and given in your presence, and you should disregard any and all information that you may derive from any other source.

Tr. p. 273.

During the State's closing argument, the deputy prosecutor stated without objection from Egwu that

> What [Milligan] did was brave, took a lot of heart, and she didn't lie even though it would have helped her out more according to defense counsel. Defense counsel thinks well if she would have gotten us the A everything would have been fine for Rikki Milligan. She wouldn't give it to us because she was telling the truth. . . .
>                                    . . .
> She came and testified in open court and that's not easy. It's not easy for anyone to do let alone a co-defendant, who knows that co-defendant right there. It's difficult. She's twenty-one and the interesting thing is that it's a seedy world in the drug world. I have the unfortunate opportunity to know it pretty well because I work with the State and I'm a prosecutor and what she did here today effetely [sic] removed her from that world. No one is ever going to buy a box from Rikki Milligan again. She will testify. She can't go back. It's called crossing the line and that is why a lot of people don't want to testify. Because eventually they are going to get out. But if you cross that line, you can't go back. That is a reason you should believe her, it's a big deal, it's a true step away from that life. She's the reason she is currently charged with the A felony we talked about that and she is also honestly the reason we don't have an A Felony against Mr. Egwu. And there was no better way I could have learned that than to have her be honest. My job is to get the truth out and thankfully a mistake that could have been made was remedy [sic] by Rikki Milligan when she testified today.

Tr. p. 320-21.

The deputy prosecutor also stated that "[Milligan] admitted to lying. She admitted to lying to me and I didn't take it to heart. Instead, I asked her to tell the truth today, and she did to a fault and it was a very very good fault to have, because our job is to get the truth out." Tr. p. 321.

6

The jury convicted Egwu of dealing in methamphetamine, a class B felony, and he now appeals.

DISCUSSION AND DECISION

I.  Standard of Review and Waiver

In addressing Egwu's contention that he is entitled to a new trial because the deputy prosecutor made several comments that amounted to misconduct during final argument, we engage in a two-step process.  We first determine whether the prosecutor engaged in misconduct, and if so, whether that misconduct, under the circumstances, placed the defendant in a position of grave danger or peril to which he would not have otherwise been subjected.  Coleman v. State, 750 N.E.2d 370, 374 (Ind. 2001).  The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct.  Wisehart v. State, 693 N.E.2d 23, 57 (Ind. 1998).

To preserve a claim of prosecutorial misconduct, the proper procedure is for the complaining party to ask the trial court for an admonishment to the jury.  Dumas v. State, 803 N.E.2d 1113, 1117 (Ind. 2004).  If, after an admonishment is given, the complaining party still believes that the admonishment has not cured the problem, he or she should request a mistrial.  Id.

We also note that the failure to object at trial results in waiver of an issue for appeal.  Boatright v. State, 759 N.E.2d 1038, 1043 (Ind. 2001).  In this case, Egwu did not object to the prosecutor's closing statement, request an admonishment, or ask for a

7

mistrial. Thus, the issue is waived. Poling v. State, 938 N.E.2d 1212, 1217 (Ind. Ct. App. 2010).

When a claim of prosecutorial misconduct has not been properly preserved, a defendant must establish not only the grounds for the misconduct but also additional grounds that amount to fundamental error. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). Fundamental error is an extremely narrow exception that permits a defendant to avoid waiver of an issue. Sobolewski v. State, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008). Under this standard, we will not reverse an instance of prosecutorial misconduct unless we are convinced that the error made a fair trial impossible or constituted blatant violations of basic and elementary principles of due process. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002).

## II. Egwu's Claims

### A. Prosecutorial Misconduct

First, we note that while a prosecutor may not vouch for a witness, he or she may "comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Cooper, 854 N.E.2d at 836. Accordingly, the prosecutor's remarks about Milligan's credibility were based on reasons that the evidence supported.

When examining the deputy prosecutor's comments quoted above, his statement that Milligan had not lied about the amount of the drug that was sold was established by her trial testimony and the various text messages that were admitted into evidence. More

8

particularly, Milligan testified that Egwu made two methamphetamine sales to her, both of which weighed between two and two-and-one-half grams. Tr. p. 93-97. The arguments about Milligan's testimony regarding the weight of the methamphetamine that was sold to her was supported by the evidence in the record. Hence, Egwu has not established that the above statements amounted to prosecutorial misconduct.

On the other hand, Egwu claims that the deputy prosecutor went "a step further" and allegedly and improperly informed the jury about his "knowledge and understanding of the social intricacies of [Milligan's] circle of friends." Appellant's Br. p. 8. However, in construing the deputy prosecutor's statement, it is apparent that he was not stating that he knew anything about Milligan's social circle, the support from her family and friends, her addiction status, whether she planned to use drugs again, or any of the other improper things that Egwu asserts were stated. Appellant's Br. p. 8-9.

Instead, the deputy prosecutor was stating that, as the jury knew, Milligan was charged with a class A felony and a class B felony and that she expected to receive between twenty-three and sixty-eight years of incarceration. Tr. p. 149, 151. And because Milligan was twenty-one, it was reasonable to infer that she would eventually be released from prison. Id. at 149, 151. It was also reasonable for the deputy prosecutor to infer—based on common knowledge regarding society and human nature—that because Milligan testified against another individual who was charged with dealing in methamphetamine, she would not be able to return to her previous lifestyle.

9

That said, it is apparent to us that the deputy prosecutor was merely drawing reasonable inferences based on the evidence that was presented at trial. In other words, there is no indication that the deputy prosecutor was requesting the jury to convict Egwu on any grounds other than what the evidence presented. Thus, we cannot say that the prosecutor's comments regarding Milligan's credibility and truthfulness constituted improper vouching that amounted to prosecutorial misconduct.

### B. Fundamental Error

Even if we assumed solely for argument's sake that the deputy prosecutor's remarks amounted to misconduct, the finding that the misconduct amounted to fundamental error is demanding. See Etienne v. State, 716 N.E.2d 457, 462 n.4 (Ind. 1999) (holding that the prosecutor's comment that "[i]f people like the defendant are allowed to use excessive force and get by with it, those are the cases that they use against us to take guns away from law abiding people because he killed somebody for no reason," was misconduct but not fundamental error).

It is also well established that improper arguments made in closing argument may be cured by the trial court's preliminary and final instructions. Flowers v. State, 738 N.E.2d 1051, 1059 (Ind. 2000). As noted above, the trial court informed the jury in its preliminary instructions that although "the attorneys will have an opportunity to make opening statements," the parties' statements "are not evidence and should be considered only as a preview of what the attorneys expect the evidence will be." Appellant's App. p. 148. The trial court's instruction also informed the jurors that after the close of the

10

evidence, the attorneys for the parties could make final arguments, but again made it clear that "[t]he final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit." Id.

Also, just before the parties made their final arguments, the trial court gave the jury several final instructions, which included the one set forth above, stating in part that "the unsworn statements or comments of counsel on either side . . . should not be considered as evidence in this case." Id. at 116. In light of this instruction, it was apparent that the jury was properly instructed to arrive at a decision based on the evidence, and not the closing arguments.

It is readily apparent that the prosecutor based his arguments on Milligan's testimony, the text messages between Milligan and Egwu, the history of pseudoephedrine purchases that Milligan and Egwu made, and the detectives' testimony who observed Norman and Young making purchases of pseudoephedrine and then selling them to Milligan and Egwu. Tr. p. 31-38, 43-44, 59-64, 77-78. In light of this evidence, the deputy prosecutor's comments did not satisfy the requirements of fundamental error. See Coleman v. State, 750 N.E.2d 370, 374-75 (Ind. 2001) (observing that even if prosecutorial misconduct occurred, the misconduct was harmless because there was overwhelming independent evidence of the defendant's guilt).

In sum, the deputy prosecutor did not "personally vouch" for Milligan's credibility. Rather, it is apparent that he presented a reasoned argument to the jury in

11

light of the evidence presented to demonstrate why Milligan was a credible witness. Moreover, Egwu has failed to show that the deputy prosecutor's statements made a fair trial impossible. The prosecutor's statements did not amount to blatant violations of basic and elementary principles of due process. Thus, Egwu's fundamental error argument fails. For all of these reasons, Egwu does not prevail on his claim of prosecutorial misconduct.

The judgment of the trial court is affirmed.

CRONE, J., concurs, and BARNES, J., concurs with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

GODFREY IKECHUKWU EGWU, JR., )
)
    Appellant-Defendant, )
)
        vs. )    No. 82A01-1311-CR-510
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

**BARNES, Judge, concurring**

I concur here, but I write separately to once again voice my concerns regarding what seems to me to be an avalanche of prosecutor ethical tightrope walking.

In view of our supreme court's recent decision in Ryan v. State, No. 49S02-1311-CR-734 (Ind. June 3, 2014), I recognize that prosecutorial vouching for witnesses must be especially egregious to warrant a finding of fundamental error where, as here, there was no objection to a prosecutor's closing argument. That standard was not met in this case. However, ethical, professional, and prosecutorial standards demand that prosecutors, as gatekeepers and guardians of our criminal justice system, do not merely "see what we can get away with" or say to themselves, "I will get as close as possible to

13

the ethical line as I possibly can." That approach flies in the face of what has been understood to be the duty and responsibility of prosecutors for literally hundreds of years.

In particular, prosecutors are duty bound to seek justice, not just convictions. In keeping with that responsibility, it is misconduct for a prosecutor to ask a jury to convict a defendant for any reason other than his or her guilt or to attempt to inflame the passions or prejudices of the jury. Wisehart v. State, 693 N.E.2d 23, 59 (Ind. 1998). Also, "[i]t is improper for the prosecutor to make an argument which takes the form of personally vouching for the witness." Schlomer v. State, 580 N.E.2d 950, 957 (Ind. 1991).

A prosecutor's duties with respect to closing arguments have been outlined by both the American Bar Association ("ABA") and National District Attorneys Association ("NDAA"). The ABA's Standards for Criminal Justice state in part:

> (a) In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw.
>
> (b) The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.
>
> (c) The prosecutor should not make arguments calculated to appeal to the prejudices of the jury.
>
> (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence.

ABA, Standards for Criminal Justice, Standard 3-5.8. Similarly, the NDAA has issued standards for prosecutors that state in part:

14

In closing argument, a prosecutor should be fair and accurate in the discussion of the law, the facts, and the reasonable inferences that may be drawn from the facts.

In closing argument, a prosecutor should not express personal opinion regarding the justness of the cause, the credibility of a witness or the guilt of the accused, assert personal knowledge of facts in issue, or allude to any matter not admitted into evidence during the trial.

NDAA, National Prosecution Standards (3rd ed.), Sections 6-8.1 and 6-8.2. More and more, and not just in this case, I have seen numerous examples of prosecutors coming close to and crossing the lines established by these standards.

I understand from personal experience that seeking convictions, representing victims, and representing the State of Indiana are all important and sacred trusts. It cannot be done without regard to the principal duty of a prosecutor—to seek justice.