# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 12 2018, 6:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**APPELLANT PRO SE**

Robert Taylor
New Castle, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

James T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Taylor, *Appellant-Defendant,* | January 12, 2018 |
| v. | Court of Appeals Case No. 49A04-1701-PC-30 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Amy Barbar, Magistrate |
| | Trial Court Cause No. 49G02-1504-PC-13099 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, Robert Taylor was found guilty of rape, a Class B felony. The trial court entered judgment of conviction and sentenced Taylor to seventeen years in the Indiana Department of Correction. On direct appeal, we affirmed Taylor's conviction. *Taylor v. State,* No. 49G06-1011-FB-86868 (Ind. Ct. App. Sept. 18, 2012). Thereafter, Taylor, pro se, filed a petition for post-conviction relief which was denied by the post-conviction court. Taylor now appeals the denial of post-conviction relief, raising four issues which we consolidate and restate as (1) whether the post-conviction court erred in denying Taylor relief on his claim that the commissioner which presided over his trial committed judicial misconduct; (2) whether the post-conviction court erred in denying Taylor relief on his claims of prosecutorial misconduct; and (3) whether Taylor's post-conviction counsel rendered ineffective assistance. Concluding the post-conviction court did not err and that post-conviction counsel was not ineffective, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Taylor's direct appeal,

> On June 27, 2009, S.S. was homeless and living in a shelter on 10th Street near downtown Indianapolis. Late that Saturday morning, she was walking down 10th Street toward Pennsylvania Avenue to a location where she could have a free lunch in a park. While walking past a construction zone, a man pulled his car up

by the curb and asked if she needed a ride. S.S. declined. Shortly thereafter, the man grabbed her from behind and dragged her up a hill where he threw her on the ground, pulled off her shorts and underwear, and raped her. After ejaculating inside her, the man then went back down the hill and drove away.

Distraught and unable to call 911, S.S. dressed and then walked to the park for lunch. Several hours later, S.S. encountered a good friend and told her about the rape. The friend helped her call police. S.S. described her attacker as a black male in his twenties or thirties, about five feet and ten inches tall, with short hair and a thin build. Detective David Everman took S.S. to Methodist Hospital to be examined by a sexual assault nurse examiner (SANE). SANE Robin Brannan collected swabs from S.S., as well as the underwear S.S. wore after the attack. A panty liner was attached to the underwear. Brannan apparently did not notice the panty liner, as it was not separated from the underwear or documented. The underwear with the panty liner were bagged together, sealed, and included in the rape kit. Thereafter, the rape kit, which was stored in a locked refrigerator, was collected by the Marion County Crime Lab and securely stored at the lab.

Shannin Guy, a forensic scientist with the Marion County Forensic Services Agency, conducted serology and DNA analysis on the material collected in the rape kit. Guy identified the presence of seminal material on the vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner. She then performed DNA analysis on a portion of the seminal material collected from each of these four items. Analysis revealed that the male DNA profiles from each item matched, identifying the same unknown male individual. Guy submitted the profile from the seminal material found on the panty liner to CODIS, which resulted in a match to Taylor in August 2010. After obtaining a buccal swab from Taylor, Guy performed further DNA analysis, directly matching his DNA to the seminal material found on the

vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner.

Detective Everman met with S.S. on October 15, 2010 and presented her with a photo array. S.S. was unable to identify her attacker. The detective then directed her to Taylor's picture and indicated that there had been a DNA match.

On November 18, 2010, the State charged Taylor with class B felony rape and class D felony criminal confinement. Taylor unsuccessfully sought to suppress the DNA results. Following a bench trial on December 7, 2011, Taylor was found guilty as charged. A judgment of conviction, however, was entered only on the rape charge, and the trial court imposed an executed sentence of seventeen years.

*Id.* at *1-2 (footnote omitted).

On January 2, 2013, Taylor filed a pro se petition for post-conviction relief and the court granted Taylor's request to appoint Taylor a public defender. The public defender filed a withdrawal of appearance on October 29, 2014, pursuant to Indiana Post-Conviction Rule 1(9)(c), which allows counsel to withdraw from representation if "counsel determines the proceeding is not meritorious or in the interests of justice . . . ." Taylor subsequently withdrew his petition without prejudice before filing a second petition for post-conviction relief on June 9, 2015, to which the public defender filed a notice of non-representation. Taylor proceeded pro se.

[4] After conducting a hearing on Taylor's second petition for post-conviction relief, the post-conviction court issued findings of fact and conclusions of law denying Taylor's petition on November 1, 2016. Taylor now appeals.

# Discussion and Decision

## I. Standard of Review

[5] Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions, and those challenges must be based on the grounds enumerated in post-conviction rules. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied.* "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Id.*

[6] On appeal, a petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). We may not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002). The post-

conviction court made findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6), and we therefore cannot affirm the judgment on any legal basis, but rather, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g,* 947 N.E.2d 962. We review the post-conviction court's factual findings under a clearly erroneous standard. *Id.*

[7] We also note that pro se litigants without legal training are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). Pro se litigants must adhere to the rules of procedure and must be prepared to accept the consequences of their failure to do so, including waiver for failure to present cogent argument on appeal. *Id.* at 983-84. We must not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.* at 984.

# II. Judicial Misconduct

[8] Taylor first claims the post-conviction court erred in denying his claim that Master Commissioner Marchal lacked jurisdiction to preside over his trial and thus committed judicial misconduct.

[9] Taylor's case was originally assigned to Judge Mark D. Stoner[1] who later assigned the case to Master Commissioner Marchal. On December 6, 2011, just one day before the case was set for a bench trial before Master Commissioner Marchal, Taylor filed a motion for Judge Stoner to hear the case pursuant to Indiana Code section 33-33-49-32(c). The statute provides,

> (c) A party to a superior court proceeding that has been assigned to a magistrate appointed under this section may request that an elected judge of the superior court preside over the proceeding instead of the magistrate to whom the proceeding has been assigned. A request under this subsection must be in writing and must be filed with the court:
>
> * * *
>
>> (2) in a criminal case, not later than ten (10) days after the omnibus date.
>
> Upon a timely request made under this subsection by either party, the magistrate to whom the proceeding has been assigned shall transfer the proceeding back to the superior court judge.

*Id.*[2]

[10] Judge Stoner signed an order granting Taylor's motion. Exhibits at 6. However, at trial the next day, the parties discussed a later e-mail from Judge

---

[1] This is after Taylor requested and was granted a change of judge.

[2] Although Indiana Code section 33-33-49-32 only discusses magistrates, we held in *Capehart v. Capehart*, 771 N.E.2d 657, 662 (Ind. Ct. App. 2002), *trans. denied.*, that the statute equally applies to master commissioners.

Stoner denying Taylor's motion. Without objection, Master Commissioner Marchal presided over Taylor's trial and heard the parties' presentation of evidence. Following the bench trial on December 7, 2011, the court's judgment and sentence were pronounced by order of Judge Stoner on January 5, 2012.

[11]     In response to Taylor's petition, the State contends (1) Taylor's motion was untimely; (2) Taylor failed to preserve the issue by objecting at trial; (3) Taylor waived the issue by failing to present it on direct appeal; and (4) Taylor's argument on post-conviction relief fails to allege resulting prejudice. On review, we conclude that Taylor waived any such claim by failing to present it on direct appeal.

[12]     It is well established that post-conviction relief is not a substitute for a direct appeal and freestanding claims that the original trial court committed error are available only on direct appeal. *Martin v. State*, 760 N.E.2d 597, 599 (Ind. 2002). Here, it is clear that Taylor's claim regarding Master Commissioner Marchal was known and available on direct appeal, but not raised. Taylor's claim is therefore waived. *Bunch v. State,* 778 N.E.2d 1285, 1289 (Ind. 2002) ("It has long been held that claims available on direct appeal but not presented are not available for post-conviction review.").[3]

---

[3] Taylor also contends that the "purported judgment of conviction is invalid by virtue of having been enter [sic] purportedly by a court officer who has not been duly appointed." Appellant's Brief at 11. This issue is also waived for having been omitted from Taylor's direct appeal. *See Bunch,* 778 N.E.2d at 1289.

# III. Prosecutorial Misconduct

Taylor next argues the post-conviction court erred in denying his claim of alleged prosecutorial misconduct in presenting improper DNA and identification testimony.

In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001). The "gravity of peril" is measured by the "'probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." *Id.* Although we determine that neither of Taylor's claims of prosecutorial misconduct require us to reach the merits of his arguments, even if they did, Taylor failed to satisfy his burden on post-conviction relief.

## A. DNA Evidence

Taylor first alleges that he was "denied his due process rights where the prosecutor used tainted DNA evidence which consist [sic] of a sanitary napkin that was never establish [sic] as being worn by the victim right after this claim of rape." Appellant's Br. at 2. In response, the State argues Taylor waived a claim of prosecutorial misconduct by failing to present it on direct appeal and that the substance of Taylor's claim is barred by res judicata. Concluding Taylor's claim was available only on direct appeal, we agree with the State.

[16] Taylor's claim of fundamental error neither presents newly discovered evidence nor argues ineffective assistance of counsel. As discussed above, post-conviction proceedings generally provide an opportunity to raise issues that were unknown or unavailable at the time of trial or the direct appeal. *Turner*, 974 N.E.2d at 581. "A petitioner for post-conviction relief cannot avoid application of the waiver doctrine by asserting fundamental error. Rather, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Green v. State,* 994 N.E.2d 1276, 1280 (Ind. Ct. App. 2013), *trans. denied.* As with Taylor's claim regarding judicial misconduct, it is clear that Taylor's claim of prosecutorial misconduct was known and available but not raised on direct appeal. Therefore, this issue too is waived. *Bunch,* 778 N.E.2d at 1289.

[17] Waiver notwithstanding, Taylor failed to satisfy his burden on post-conviction relief. On direct appeal, Taylor challenged the admission of DNA evidence obtained from the victim's panty liner and we concluded that

> [t]o the extent one of the four DNA matches was improperly admitted, which it was not, the other three conclusively established his identity. Accordingly, any error in the admission of the evidence obtained from the panty liner would have been harmless.

*Taylor,* No. 49G06-1011-FB-86868 at *3. The thrust of Taylor's first claim regarding prosecutorial misconduct is the admission of the same DNA evidence discussed above and, as we have previously explained, any error in its

admission was harmless considering the remaining evidence of Taylor's guilt. Therefore, even assuming Taylor satisfied his burden regarding the alleged prosecutorial misconduct, he still would not be entitled to relief. *See Coleman v. State,* 750 N.E.2d 370, 375 (Ind. 2001) (holding any error regarding alleged prosecutorial misconduct was harmless where there was independent evidence of defendant's guilt).

## B. Identification Testimony

Next, Taylor alleges that the prosecutor engaged in misconduct when the victim was allowed to identify him at trial "after knowing that the [victim] suffered from a serious case of doubt about Taylor being the perpetrator of the crime[.]" Appellant's Br. at 17.

Like Taylor's argument regarding DNA evidence, this issue is one of trial court error which is available only on direct appeal. *Martin,* 760 N.E.2d at 599. Accordingly, it too is waived. *Id.* Taylor also incorporates into his argument several other undeveloped claims regarding the victim's identification testimony which, even if fully developed so as to conform with Indiana Appellate Rule 46(A)(8)(a), would be similarly waived as issues for direct appeal, not post-conviction relief.[4]

---

[4] Although Taylor spends much of this section alleging the victim committed perjury, he also alleges the photo array was unduly suggestive and that he was entitled to counsel at the time the photo array was shown to the victim. *See* Appellant's Br. 17-18.

[20] Waiver notwithstanding, we addressed the substance of Taylor's argument on direct appeal and concluded that any error in the in-court identification was harmless because Taylor was "conclusively identified" by the DNA evidence. *Taylor,* No. 49G06-1011-FB-86868 at *4. This remains true and even if Taylor's claim regarding prosecutorial misconduct was not waived, he has still failed to satisfy his burden on post-conviction relief. *See Coleman,* 750 N.E.2d at 375.

## IV. Right to Counsel

[21] Finally, Taylor claims he was deprived of his right to effective assistance of post-conviction counsel under both the federal and state constitutions.[5]

[22] The record reflects that Taylor was appointed a public defender after he filed his initial petition for post-conviction relief. The public defender subsequently filed a withdrawal of appearance pursuant to Indiana Post-Conviction Rule 1(9)(c), which allows withdrawal from representation if "counsel determines the proceeding is not meritorious or in the interests of justice . . . ." The public defender then filed a notice of non-representation in response to Taylor's second petition for post-conviction relief and Taylor proceeded pro-se.

[23] Although often unclear, it appears Taylor contends his post-conviction counsel "abandoned [him] in the first round." Appellant's Br. at 19. Taylor, however,

---

[5] To the extent that Taylor claims ineffective assistance of trial and appellate counsel, we do not interpret these as freestanding claims because, in context, they merely form the basis for Taylor's claim of ineffective assistance of post-conviction counsel.

fails to address the post-conviction court's finding that "the State Public Defender did exactly that which the rule provided he must do." Appellant's Appendix, Volume 2 at 139. Instead, Taylor asks that we "review his claim under ineffective assistance of trial [sic] counsel claim under the prong test set forth in *Strickland v. Washington*[.]" Appellant's Br. at 19.

[24] We must, of course, decline Taylor's invitation and we note that there is no federal or state constitutional right to counsel in post-conviction proceedings from which *Strickland* is derived. *See Hill v. State,* 960 N.E.2d 141, 145 (Ind. 2012). "[T]he right to counsel in a post-conviction proceeding is guaranteed neither by the Sixth Amendment of the United States Constitution nor article 1, § 13 of the Constitution of Indiana." *Daniels v. State*, 741 N.E.2d 1177, 1190 (Ind. 2001). Concluding Taylor's brief fails to advance a cogent argument regarding ineffective assistance of post-conviction counsel, we hold Taylor has waived such review. Ind. Appellate Rule 46(A)(8)(a).

# Conclusion

[25] For the reasons discussed above, we conclude the post-conviction court did not err in denying Taylor's petition for post-conviction relief and that Taylor did not receive ineffective assistance of post-conviction counsel. Accordingly, we affirm.

[26] Affirmed.

Crone, J., and Bradford, J., concur.