Victor T. **SOBOLEWSKI**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 63A01–0802–CR–58.

Court of Appeals of Indiana.

July 8, 2008.

Transfer Denied Sept. 12, 2008.

statutory reason for setting aside paternity affidavit).

Steven E. Ripstra, Jasper, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Victor Sobolewski appeals his conviction and sentence for child exploitation as a class C felony[1] enhanced by his status as an habitual offender.[2] Sobolewski raises four issues, which we revise and restate as:

I. Whether the trial court abused its discretion by denying his requests for a continuance;

II. Whether the prosecutor committed prosecutorial misconduct;

III. Whether he was denied a fair trial as a result of certain remarks made by the prosecutor; and

IV. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. S.H. was born on January 30, 1991. In August 2006, S.H. began working at a fast food restaurant, where she met Sobolewski, born on February 13, 1970, and also employed there. They later had sex. On February 7, 2007, Sobolewski called the police because he was afraid that "two gentlemen ... were going to start a fight with him at his residence." Transcript at 66. Petersburg Police Department Officer

---

1. Ind.Code § 35–42–4–4 (2004) (subsequently amended by Pub.L. No. 216–2007, § 43 (eff. July 1, 2007)).

2. Ind.Code § 35–50–2–8 (Supp.2005).

Steve Nash, responding to the call, found S.H. with Sobolewski at his residence, although it was a "school day." *Id.* at 62. S.H. seemed "giddy," and a breath test administered to her came back positive for alcohol. *Id.* at 63. She was sent to a juvenile detention center for one week and then placed on house arrest. Sobolewski was arrested, but a friend bonded him out of jail.

Shortly thereafter, Sobolewski was arrested for an unrelated offense, and S.H. spent $3,500 of her own money bonding him out of jail. Without her father's knowledge, she then let Sobolewski in through the back door of her father's house, and he stayed in her bedroom for several days. Using S.H.'s digital camera, Sobolewski took some pictures, including a picture of S.H. performing fellatio on him. On March 25, 2007, the police received information that Sobolewski was violating a court order by being with S.H. Petersburg Sheriff's Deputy Brad Jenkins and other officers went to the house of S.H.'s father and informed him that he had an intruder. They then found Sobolewski and S.H. in bed together with marijuana and alcohol in plain view.

On March 28, 2007, the State charged Sobolewski with: (1) Count I, child exploitation as a class C felony; (2) Count II, criminal trespass as a class A misdemeanor; (3) Count III, possession of marijuana as a class A misdemeanor; and (4) Count IV, possession of paraphernalia as a class A misdemeanor. The State also filed an habitual offender enhancement.

On October 22, 2007, the first day of the jury trial, the State filed a motion in limine to exclude any reference to a previous trial of Sobolewski under a different cause

number, and the trial court granted the motion. The trial court granted the State's motion to dismiss Counts II, III, and IV with prejudice.

The next day, S.H. testified that Sobolewski had two tattoos, one on his chest and another on his leg. The prosecutor displayed some of the pictures found on S.H.'s digital camera, and S.H. testified that they had been taken over several days while Sobolewski was staying in her bedroom.[3] When S.H. was shown the picture of herself performing fellatio on a male, she testified that the picture had been taken in her room on the night Sobolewski was arrested, that she was performing fellatio on Sobolewski in the picture, and that Sobolewski had taken the picture himself.

On direct examination, Sobolewski denied that he was the male in that picture and further denied having ever used S.H.'s camera. Sobolewski stated that he had five tattoos, including a tattoo on his penis of an 'X', which, he asserted, had been given to him one and one-half years earlier by a former girlfriend using a sewing needle and "Indian ink." *Id.* at 281. He claimed that the penis in the photograph could not be his because it did not bear a tattoo of an 'X.'.

At one point, Sobolewski testified in narrative form about his previous criminal convictions and complained that he had "lost everything" and been "slandered in the paper" since his incarceration. *Id.* at 293. When he mentioned his "last trial," the prosecutor objected that this testimony violated the trial court's order excluding any reference to an earlier trial of Sobolewski under a different cause number, addressing the trial court as follows:

---

**3.** These pictures are not in the exhibit volume because the digital camera, rather than the pictures themselves, was admitted into evidence and the camera was retained in the Pike Circuit Court Evidence Lockup. It appears that the jury was shown the pictures on the camera with the help of an overhead projector.

Look, I've tried to give [Sobolewski's attorney] all the leeway in the world. Alright. I have tried for two . . . days. He has done nothing but ask clearly objectionable questions, trying to harass witnesses, make objections without knowing the rules, be totally amateurish and then he puts his client up to violate the Court's order.

*Id.* at 294–295. The trial court sustained the objection and, after a sidebar conference off the record, admonished the jury. The jury then left the courtroom, and Sobolewski's attorney moved for a mistrial "on the basis that the State . . . challenged the abilities of defense counsel." *Id.* at 296. The trial court denied the motion but instructed the parties to "refrain from making any direct comments as to other counsel." *Id.* When the jury returned, the trial court admonished the jury that it was to disregard any statement made by Sobolewski about a prior jury trial. The parties agreed to have pictures taken of Sobolewski's 'X' tattoo.

On the third day of the trial, three pictures of Sobolewski's penis with the 'X' tattoo were admitted into evidence. On cross examination, the prosecutor asked Sobolewski whether he had told the police about the tattoo during the seven months between his arrest and trial, and Sobolewski responded that he had not. The prosecutor asked, "[Y]ou're saying for seven [ ] months, you could have proved your innocence but you decided to wait till now?" *Id.* at 346. Sobolewski agreed. The prosecutor moved to admit into evidence Sobolewski's pretrial proof of compliance with discovery order stating that he did not intend to present any defenses at the time of trial. Sobolewski objected, arguing that the document was hearsay, unfairly prejudicial, and that admission of the document would violate his constitutional "protection to . . . refuse to take the stand if he wants to do so." *Id.* at 329. Overruling Sobo-

lewski's objection, the trial court admitted the document.

When asked whether he knew he had a defense when he submitted the proof of compliance, Sobolewski claimed that, even though he "knew that [he] had a defense to whether or not the penis in th[e] picture was [his]," he "didn't know that until [he] got the picture" the week before the trial. *Id.* at 332. The prosecutor then asked the trial court to take judicial notice of the fact that, on April 2, 2007, Sobolewski "was arraigned . . . and [the charge against him] was read to him from the bench." *Id.* at 332. Sobolewski then agreed that he was "told that at issue was a photograph that [the State was] claiming [Sobolewski] had made of [S.H.] giving a male subject oral sex." *Id.* at 333.

The State then called Pike County Jail Commander Ronnie J. Collins to the stand, and Collins testified that he had found a pencil with a needle attached to it and a piece of paper with ink inside of it in Sobolewski's jail cell that morning. Collins testified that the device, or "tattoo pick," "was consistent with other tattooing devices" he had seen. *Id.* at 404, 430. The tattoo pick was admitted into evidence. Collins further testified that, although the jail makes a record of scars, marks, and tattoos, the Pike County Jail records of Sobolewski's tattoos did not indicate that he had one on his penis when he was booked into the jail. Sobolewski moved for a continuance to test the tattoo pick for DNA, but the trial court denied the motion.

The State then called William C. Jackson, one of Sobolewski's cellmates, to the stand. Sobolewski objected because the witness was undisclosed and asked for a continuance to depose Jackson, but the trial court overruled the objection. After viewing a picture of the tattoo pick found

in Sobolewski's cell, Jackson testified that he had used it to help Sobolewski finish a tattoo of an 'X' on Sobolewski's penis ten or eleven days before the trial.

During closing arguments, the prosecutor noted Sobolewski's failure to mention the 'X' tattoo during his seven months in jail awaiting trial, to which Sobolewski made no objection. The jury found Sobolewski guilty of child exploitation as a class C felony and also found him to be an habitual offender. At sentencing, the trial court found the following aggravating factors: (1) Sobolewski's lengthy criminal history; (2) the fact that he was on probation when he committed the offense; and (3) the fact that prior probations and suspended sentences had been unsuccessful. The trial court found the undue hardship of Sobolewski's incarceration on his child as a mitigating factor. Finding that the aggravators outweighed the mitigators, the trial court sentenced Sobolewski to eight years for the child exploitation conviction enhanced by twelve years for his status as an habitual offender. Thus, Sobolewski received a total sentence of twenty years in the Indiana Department of Correction.

## I.

■ The first issue is whether the trial court abused its discretion by denying Sobolewski's requests for a continuance. Indiana Code § 35–36–7–1 provides for a continuance upon a proper showing by affidavit of an absence of evidence or the illness or absence of the defendant or a witness. See *Maxey v. State*, 730 N.E.2d 158, 160 (Ind.2000). Rulings on a nonstatutory motion for continuance, such as Sobolewski's, lie within the discretion of the trial court and will be reversed only for an abuse of discretion that results in prejudice. *Id.* An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and cir-

cumstances. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind.1999). Continuances for additional time to prepare for trial are generally disfavored, and courts should grant such motions only where good cause is shown and such a continuance is in the interest of justice. *Id.*

Sobolewski argues that he should have been granted a continuance to test the tattoo pick for DNA and to depose his cellmate, Jackson. He complains that the State's "rebuttal evidence was undisclosed" and, thus, appears to argue that the evidence should have been excluded because of a discovery violation. Appellant's Brief at 9.

■ "With respect to rebuttal witnesses, nondisclosure is excused when that witness was unknown and unanticipated." *Beauchamp v. State*, 788 N.E.2d 881, 892 (Ind.Ct.App.2003). "A 'known' witness refers to knowledge of the existence of the witness." *Carrigg v. State*, 696 N.E.2d 392, 398 (Ind.Ct.App.1998) (quoting *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 179 (Ind.1993)), *trans. denied.* "An 'anticipated' witness is one which a party or her counsel anticipates the need for at trial." *Id.* (quoting *McCullough*, 605 N.E.2d at 179).

Here, in the seven months between Sobolewski's arrest and trial, he never mentioned that he had a tattoo of an 'X' on his penis or that he would use the tattoo as part of his defense. The State first learned of the tattoo when Sobolewski took the stand on the second day of the trial. Thus, the tattoo pick found in his cell and the testimony of his cellmate, Jackson, showing that Sobolewski had given himself the tattoo ten or eleven days before the trial were neither known nor anticipated by the State before trial. Accordingly, the State was excused from disclosing the existence of the tattoo pick and the fact that it would call Jackson as a rebuttal witness.

*See, e.g., Cleary v. State,* 663 N.E.2d 779, 784 (Ind.Ct.App.1996) ("[T]he State could not have anticipated that Bennett would testify since it did not discover that Cleary had the stolen belt until the defense had rested. Accordingly, the State was excused from disclosing this witness."). Because the State's nondisclosure was excused, we cannot say that the trial court abused its discretion when it denied Sobolewski's motion for a continuance. *See, e.g., Hill v. State,* 531 N.E.2d 1382, 1384 (Ind.1989) (holding that the trial court did not err in denying defendant's motion for a continuance), *reh'g denied.*

## II.

■ The next issue is whether the prosecutor committed prosecutorial misconduct. Sobolewski complains that, on cross examination, the prosecutor asked him why he had not informed the police of his tattoo defense during the seven months before trial. He also complains that the prosecutor, during closing arguments, mentioned his failure to inform police of his defense. The State responds that "the prosecutor did not improperly comment on [Sobolewski's] post-arrest silence." Appellee's Brief at 11. Although Sobolewski frames the issue as a violation of his right against self incrimination as secured by the Fifth Amendment to the United States Constitution, violation of a defendant's post-arrest right to remain silent once the defendant has been Mirandized, known as a *Doyle* violation, is "actually a violation of the Due Process Clause's prohibition against fundamental unfairness, not a violation of the Fifth Amendment privilege against self-incrimination." *Bevis v. State,* 614 N.E.2d 599, 602 (Ind.Ct.App.1993) (citing *Wainwright v. Greenfield,* 474 U.S. 284, 291, 291 n. 7, 106 S.Ct. 634, 638–39, 639 n. 7, 88 L.Ed.2d 623 (1986)). Although Sobolewski cites no case law to develop his argument for a *Doyle* violation, we will

nevertheless address Sobolewski's claim. *See Francis v. State,* 758 N.E.2d 528, 531 (Ind.2001) ("Although citing absolutely no authority to support his argument, Francis makes a claim for what is commonly referred to as a *Doyle* violation.").

■ We note that Sobolewski made no objection during the prosecutor's closing argument and did not object to the prosecutor's line of questioning on cross examination on the basis of a *Doyle* violation. In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Cooper v. State,* 854 N.E.2d 831, 835 (Ind.2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

■ Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. *Id.* More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id.* Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id.* It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Id.*

■ Sobolewski's claim rests on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49

L.Ed.2d 91 (1976). "In *Doyle*, the United States Supreme Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who has been arrested and Mirandized to impeach the defendant." *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind.2002) (citing *Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245). "Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." *Id.* at 1183 (quoting *Anderson v. Charles*, 447 U.S. 404, 407–408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980)). The Indiana Supreme Court acknowledged the *Doyle* rule the same year that *Doyle* was decided. *Id.* (citing *Jones v. State*, 265 Ind. 447, 355 N.E.2d 402 (1976)). An alleged *Doyle* violation is of constitutional magnitude and may be reviewed under the fundamental error doctrine. *Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999) (citation omitted).

■ Here, after the State introduced the picture of S.H. performing fellatio on a male, Sobolewski claimed on direct examination that he had a tattoo of an 'X' on his penis, and, therefore, that the penis in the photograph could not be his because it did not bear a tattoo of an 'X.' Pictures of Sobolewski's penis were taken and, on the following day, admitted into evidence. On cross examination, the prosecutor asked Sobolewski whether he had told the police about the tattoo during the seven months between his arrest and trial, and Sobolewski responded that he had not. The prosecutor asked, "[Y]ou're saying for seven [ ] months, you could have proved your innocence but you decided to wait till now?" Transcript at 346. The prosecutor also commented during closing arguments on the fact that Sobolewski had failed to raise the tattoo defense while in jail awaiting trial.

"A defendant who receives Miranda warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers." *Jones*, 265 Ind. at 451, 355 N.E.2d at 405. "Penalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest." *Id.* We conclude that, by asking Sobolewski why he had not informed police about his tattoo while awaiting trial, the prosecutor was clearly attempting to impeach Sobolewski's credibility with his post-arrest silence, which is impermissible under *Doyle*. *See Bevis v. State*, 614 N.E.2d 599, 602 (Ind.Ct.App.1993) (holding that prosecutor's questions about defendant's post-arrest silence designed to impeach defendant were impermissible under *Doyle* ).

■ However, the use of a defendant's post-arrest silence to impeach a defendant's exculpatory explanation is subject to harmless error analysis. *Robinette v. State*, 741 N.E.2d 1162, 1164 (Ind.2001) (citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)). A constitutional error may be harmless if it is clear beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *Kubsch v. State*, 784 N.E.2d 905, 923 (Ind.2003) (citing *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828). In analyzing whether a *Doyle* violation is harmless beyond a reasonable doubt, this Court examines five factors: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court of an opportunity to grant a motion for mistrial or give a curative instruction. *Robinette*, 741 N.E.2d at 1165.

■ After reviewing the record in light of the above factors, we conclude that the error here was harmless. In its attempt to impeach Sobolewski's credibility regarding his tattoo defense, the State produced overwhelming evidence that Sobolewski had given himself the tattoo ten or eleven days before trial. A tattoo pick and piece of paper containing ink were found in his jail cell, and one of his cellmates testified that he had helped Sobolewski complete the tattoo. Sobolewski's jail records did not reference a tattoo on his penis among his scars, marks, and tattoos. Moreover, in her testimony, S.H. mentioned that Sobolewski had a tattoo on his chest and another on his leg but did not mention that he had any tattoos on his penis. Finally, three pictures of Sobolewski's penis with the 'X' tattoo were admitted into evidence, and the jury was able to compare these pictures to the penis in the picture of S.H. performing fellatio on a male.

We also note that there was overwhelming evidence of Sobolewski's guilt. When S.H. was shown the picture of herself performing fellatio, she testified that the picture had been taken in her bedroom on the night Sobolewski was arrested, that she was performing fellatio on Sobolewski in the picture, and that Sobolewski had taken the picture himself. Moreover, the police confiscated S.H.'s digital camera containing the picture in question on the evening they found Sobolewski in her bed, and the camera contained other pictures of Sobolewski and S.H.

Given the overwhelming evidence offered to impeach Sobolewski, as well as the evidence of his guilt, we conclude that it is clear beyond a reasonable doubt that any error in the State's use of Sobolewski's post-arrest silence to impeach him did not contribute to his conviction and, therefore, was harmless. *See, e.g., Shelton v. State,* 679 N.E.2d 499, 504 (Ind.Ct.App.1997)

(holding that the State's use of defendant's silence was harmless beyond a reasonable doubt). Thus, we cannot say that the State's references to Sobolewski's post-arrest silence constitute fundamental error.

### III.

■ The next issue is whether Sobolewski was denied a fair trial as a result of certain remarks made by the prosecutor. As noted above, in reviewing a claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Coleman v. State,* 750 N.E.2d 370, 374 (Ind.2001). The "gravity of peril" is measured by the "probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." *Id.* The probability that misconduct had a persuasive effect is "generally a function of three factors: the persuasiveness of the comment, the relative strength of the State's case, and the effectiveness of the trial judge's response to the comment." *Moore v. State,* 669 N.E.2d 733, 740 (Ind. 1996), *reh'g denied.*

Sobolewski complains that the prosecutor described his attorney as "incompetent and underhanded." Appellant's Brief at 15. He cites *Bardonner v. State,* 587 N.E.2d 1353 (Ind.Ct.App.1992), for the proposition that it was misconduct to "put Defense counsel in the position of defending himself and his trial tactics, along with or instead of, his client." Appellant's Brief at 15.

The Indiana Supreme Court discussed *Bardonner* as follows:

In *Bardonner,* the prosecutor asked prospective jurors whether they thought that both the State and the defense have an obligation to seek the truth. When a

juror responded affirmatively, he told the panelists "that wasn't the law." *Id.* at 1355. He quoted extensively from a dissenting opinion in the U.S. Supreme Court, *United States v. Wade*, 388 U.S. 218, 256–58, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (White, J., dissenting), on the role of prosecutors and defense attorneys. He interspersed his own comments. The prosecutor said that the State's obligation was not to win its case, but to see that justice is done. *Bardonner*, 587 N.E.2d at 1356. The prosecutor also declared that defense counsel need present no evidence, even if he knows the truth, that defense counsel can confuse a witness, even a truthful one, and that our system of justice requires conduct from defense attorneys that in many instances has little if any relation to the search for truth. *Id.*

The Court of Appeals held these statements to be misconduct that placed the defendant in grave peril, stating, "we cannot say that the prosecutor's comments—attacking the integrity of defense counsel by indicating that defense counsel would do anything to hide the truth, including impeaching testimony of truthful witnesses—did not affect the jurors' verdict." *Id.* at 1362. Our Court disapproved of similar statements by a prosecutor in *Miller v. State*, 623 N.E.2d 403, 407 (Ind.1993).

*Coy v. State*, 720 N.E.2d 370, 373 (Ind. 1999). "There are two potentially objectionable components to the statements challenged in *Bardonner*: (1) painting prosecutors as 'ministers of justice', and (2) denigrating defense attorneys." *Id.*

Here, despite the trial court's order prohibiting any reference to an earlier trial of Sobolewski under a different cause number, Sobolewski's attorney allowed him to testify in an extended narrative about how he had "lost everything" and been "slandered in the paper" since his incarceration. Transcript at 293. When he mentioned his "last trial," the prosecutor objected that this testimony violated the trial court's order, addressing the trial court as follows:

> Look, I've tried to give [Sobolewski's attorney] all the leeway in the world. Alright. I have tried for two ... days. He has done nothing but ask clearly objectionable questions, trying to harass witnesses, make objections without knowing the rules, be totally amateurish and then he puts his client up to violate the Court's order.

*Id.* at 294–295. The trial court sustained the objection and, after a sidebar conference off the record, admonished the jury.[4] The jury then left the courtroom, and Sobolewski's attorney moved for a mistrial "on the basis that the State ... challenged the abilities of defense counsel." *Id.* at 296. The trial court denied the motion but instructed the parties to "refrain from making any direct comments as to other counsel." *Id.* When the jury returned, the trial court admonished the jury that it was to disregard any statement made by Sobolewski about a prior jury trial.

We hold that the present case is distinguishable from *Bardonner* because the prosecutor's comments were not designed to elevate prosecutors and denigrate defense attorneys in the eyes of the jury. While not approving the prosecutor's comments, we believe he was merely expressing his frustration with the performance of Sobolewski's attorney. "Breaches of civility and attacks on the integrity or competence of counsel, particularly in a context where opposing counsel is giving as well as taking, are ordinarily matters for another

---

**4.** The record recites that the trial court admonished the jury after the sidebar conference but does not contain a transcription of the admonishment.

forum." *Marcum v. State*, 725 N.E.2d 852, 860 (Ind.2000), *reh'g denied.* Moreover, Sobolewski has not shown how the prosecutor's comments had a probable persuasive effect on the jury's decision. *See, e.g., id.* at 859–860 ("Although many of Cummings' comments were improper, and some appear to be direct violations of the Rules of Professional Conduct, Marcum is not entitled to relief on his claim of prosecutorial misconduct because he has not established that the improper comments had a probable persuasive effect on the jury's decision."). Sobolewski's claim of prosecutorial misconduct fails.

## IV.

 The final issue is whether Sobolewski's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006). Sobolewski argues that he should not have been sentenced to eight years for the child exploitation conviction.

Our review of the nature of the offense reveals that, after sixteen-year-old S.H. bonded Sobolewski out of jail for a previous offense using $3,500 of her own money, Sobolewski stayed in her bedroom without her father's knowledge for several days in violation of a court order. During this time, he took several pictures using S.H.'s digital camera, including a picture of S.H. performing fellatio on him. When the police found them in bed together, there was alcohol and marijuana in plain view.

Our review of the character of the offender reveals that Sobolewski has previous convictions for possession of cocaine and marijuana, resisting arrest, grand theft auto, giving false identification, driving with a suspended license, criminal mischief, and theft. He has been on probation numerous times and was on probation for a previous conviction when he committed the present offense. Given Sobolewski's lengthy criminal history and his failure to abide by the law while on probation, we fail to see why he should be sentenced to anything less than eight years for the child exploitation conviction.

After due consideration of the trial court's decision, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., Garland v. State*, 855 N.E.2d 703, 711 (Ind.Ct.App.2006) (holding that the maximum sentence for child molesting was not inappropriate in light of the nature of the offenses and his character), *trans. denied.*

For the foregoing reasons, we affirm Sobolewski's conviction and sentence for child exploitation as a class C felony enhanced by his status as an habitual offender.

Affirmed.

NAJAM, J. and DARDEN, J., concur.