## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2016, 5:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Hezekiah Joel Colbert
Wabash Valley Correctional Facility
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Hezekiah Joel Colbert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 21, 2016

Court of Appeals Case No.
32A01-1601-PC-220

Appeal from the Hendricks
Superior Court

The Honorable Peter R. Foley,
Special Judge

Trial Court Cause No.
32D05-1110-PC-11

**Pyle, Judge.**

# Statement of the Case

Hezekiah Joel Colbert ("Colbert") appeals from the post-conviction court's denial of his petition for post-conviction relief, in which he alleged that he had received ineffective assistance of trial and appellate counsel. Concluding that Colbert has failed to meet his burden of showing that the post-conviction court erred by denying relief on his allegations of ineffective assistance of trial and appellate counsel, we affirm the post-conviction court's judgment.

We affirm.

# Issue

> Whether the post-conviction court erred by denying post-conviction relief on Colbert's claims of ineffective assistance of trial and appellate counsel.

# Facts

The facts of Colbert's crimes were set forth in the memorandum decision from his direct appeal as follows:

> At the time relevant to this appeal, Jarrod Wilson ("Jarrod") and Misty Wilson ("Misty") had been married, divorced, and re-married. In the summer of 2008, they had been married for seven years, but by the following summer, they were estranged. Misty had started a romantic relationship with her high school boyfriend, Colbert. Jarrod moved out of the marital residence on Murray Street in Indianapolis and began to live at his parents' home on Sycamore Street in Brownsburg, Indiana. Colbert then moved in with Misty and her children. Although Misty and Colbert had discussed the prospect of marriage, she later informed Colbert that she wanted to reunite her family and

return to her husband Jarrod. After learning this, Colbert said that he would kill Jarrod, and began to wear in his waistband a butcher knife that he had taken from Misty's house. In August of 2009, Jarrod went to Misty's home to help her repair plumbing, and met Colbert at the house.

On August 28, 2009, three days after Colbert threatened to kill Jarrod, Misty saw Colbert carrying the butcher knife. That same day, Jarrod returned from work to his parents' house. While on the computer, he received an instant message from Colbert, who was using Misty's account. The message stated, "Ha ha, nice try. She's playing both of us." Tr. p. 404. Jarrod did not respond, but did inform Misty about the message. Jarrod then opened the garage door in anticipation of his parents' return home, and fell asleep on the living room couch.

Jarrod awoke as Colbert was stabbing him. Colbert wrapped his arm around Jarrod from behind, held him down, and stabbed him repeatedly in the side and chest. Jarrod broke free from Colbert and ran to the other side of the table in front of the couch and "[g]ot a good look" at Colbert, who was only a few feet away. He saw the knife Colbert was holding, which he recognized as a butcher knife from Misty's house, and also noticed that Colbert had a tattoo on his neck. Jarrod managed to escape to a neighbor's house, where the neighbor called the police and an ambulance. Jarrod was taken to Wishard hospital in Indianapolis, where he underwent emergency surgery to repair his injuries, which included wounds to his chest, abdomen, stomach, and diaphragm. Jarrod lost over one liter of blood and has suffered from long-term loss of feeling in his fingers. Jarrod told the police investigating the stabbing that Colbert was his attacker. When the police went to Colbert's residence, he crashed his van into a neighbor's garage while attempting to flee.

The State subsequently charged Colbert with Class A felony attempted murder, Class A felony burglary, Class B felony aggravated battery, and Class C felony battery. The State also alleged that Colbert was an habitual offender. During the jury

trial, the State called as a witness Sergeant Jennifer Barnes ("Sgt. Barnes"), who worked for the cyber crimes unit of the Indiana State Police. Sgt. Barnes testified that she conducted a forensic search of the computer at Misty's home and found evidence that someone had used the Yahoo! maps website to look for directions from Misty's house, where Colbert had been staying, to Jarrod's parents' house, where Jarrod was attacked. Colbert objected to this testimony on hearsay grounds, but the trial court overruled his objection.

The jury ultimately found Colbert guilty as charged and found him to be an habitual offender. At the sentencing hearing, the trial court vacated Colbert's convictions for aggravated battery and battery, and reduced the burglary conviction from a Class A felony to a Class C felony, all on double jeopardy grounds. The court then concluded that the aggravating factors outweighed the mitigating factors and sentenced Colbert to forty-eight years for the attempted murder conviction, enhanced by thirty years for the habitual offender determination, and to a consecutive twelve years for the burglary conviction, for an aggregate sentence of ninety years.

*Colbert v. State*, No. 32A04-1004-CR-259 *1-2 (Ind. Ct. App. Dec. 30, 2010),

*reh'g denied*, *trans. denied*.

[4] On direct appeal, Colbert raised two arguments. Specifically, he argued that: (1) the trial court erred by admitting evidence regarding an internet search for directions from Colbert's house to the victim's house, and (2) his aggregate sentence of ninety years was inappropriate. In December 2010, our Court

issued a memorandum decision, affirming his convictions and sentence.[1] Thereafter, Colbert filed pro se petitions for rehearing and transfer, both of which were denied.

[5] Subsequently, in October 2011, Colbert filed a pro se petition for post-conviction relief and later filed amended pro se petitions in October 2013 and May 2014.[2] In his final amended petition, Colbert raised post-conviction claims of ineffective assistance of trial and appellate counsel. Specifically, he alleged, in relevant part, that his trial counsel had rendered ineffective assistance by failing to object to the following evidence: (1) two police in-car videos (State's Exhibits 122 & 123); (2) the victim's testimony regarding his identification of Colbert; (3) four letters written by Colbert to Misty and her daughter (State's Exhibits 115-118); and (4) the State's cross-examination of Colbert during the jury trial regarding his burglary prior conviction and the State's evidence during his habitual offender enhancement phase, the accumulation of which he claimed resulted in a "transference of [the] burden of proof" in the habitual offender phase. (App. 86).

[6] In regard to Colbert's ineffective assistance of appellate counsel claim, he alleged, in relevant part, that his counsel had rendered ineffective assistance by:

---

[1] When addressing Colbert's evidentiary issue, our Court noted that this issue regarding the admission of the computer search evidence was "interesting" and "complicated." *Colbert*, No. 32A04-1004-CR-259 at *6.

[2] The Indiana Public Defender's Office was appointed to represent Colbert after he filed his first post-conviction petition, and the Deputy State Public Defender withdrew her appearance in September 2013.

(1) failing to raise an appellate issue regarding his Fifth Amendment right to remain silent; (2) failing to raise an appellate issue regarding the admission into evidence of the four letters written by Colbert to Misty and her daughter; and (3) failing to file a petition for rehearing and a petition to transfer.

[7]     On October 31, 2014, the post-conviction court held a hearing on Colbert's post-conviction petition.[3]  During the hearing, Colbert represented himself pro se and called his trial counsel, Michael J. Manning ("Trial Counsel Manning"), and appellate counsel, Lisa Manning ("Appellate Counsel Manning") as witnesses.[4]  The post-conviction court also took judicial notice of the trial record, which showed that Trial Counsel Manning had objected at trial to the four letters written by Colbert to Misty and her daughter (State's Exhibits 115-118).

[8]     Trial Counsel Manning testified that, during Colbert's jury trial, he had objected to a police officer's testimony and moved for a mistrial after the officer testified that Colbert did not want to answer the officer's questions.  At trial, Trial Counsel Manning argued that a mistrial should be granted because the officer had inappropriately commented on Colbert's right to remain silent, and trial counsel asserted that the prosecutor had led the officer to do so.  The trial

---

[3] Initially, the Honorable Stephanie LeMay-Luken was the judge in Colbert's post-conviction proceeding. However, in October 2013, the post-conviction court issued an order for election of a special judge, and the Honorable Jane Craney ("Judge Craney") was selected as special judge.  Thus, Judge Craney presided over Colbert's October 2014 post-conviction hearing.

[4] Trial Counsel Manning and Appellate Counsel Manning are married.

court denied the motion for mistrial, instructed the State that it and its witnesses were prohibited from commenting on Colbert's lack of statement to police, and the trial court specifically admonished the jury that it was not to consider the officer's testimony.

[9] In regard to the lack of objection to the introduction into evidence of two police in-car videos (State's Exhibits 122 & 123), Colbert asserted that Trial Counsel Manning should have objected to them because Colbert himself had not viewed them prior to trial. Trial Counsel Manning testified that, even if Colbert had not previewed the videos, he had viewed the videos prior to trial and had discussed them with Colbert. Trial counsel also testified that he had objected to State's Exhibit 123 as cumulative.

[10] When Colbert questioned Trial Counsel Manning about his lack of objection to the State's impeachment of him with his burglary conviction, Trial Counsel Manning testified that "[a] [b]urglary conviction would almost always be admissible unless it was too old." (Tr. 164).

[11] Appellate Attorney Manning testified that she had reviewed the trial transcripts and had decided to raise the two appellate issues (hearsay evidentiary issue and sentencing issue) because she considered them to be the two strongest issues. When testifying at the post-conviction hearing, Appellate Attorney Manning acknowledged that she and Colbert had discussed the potential appellate issue regarding "[t]he *Doyle* violation that had come up on [his] post-*Miranda*

silence." (Tr. 80) (italics added).[5] Colbert questioned Appellate Attorney Manning as to why she chose to raise the hearsay evidentiary issue on appeal instead of an issue challenging the denial of mistrial motion based on the police officer's comment on his right to remain silent, and she testified as follows:

> I had done a considerable amount of evidence or research on the *Doyle* violation[] in, mostly in, from our Supreme Court here in Indiana and the way that the witness had testified and the way that the Judge had sustained part of the objection, denied the mistrial and most importantly in the content of [the judge's] admonishment as well as the jury's response or lack of response to that admonishment as well as the State's refusal to, or their, their, not their refusal but the fact that they didn't bring that up in closing argument. Um, I had determined from all of that that a *Doyle* violation would not be successful on appeal. At that time, I had flagged this issue of the Yahoo map search being hearsay because it was an absolutely novel issue for the Court and had not been litigated before and I thought that would be more successful on appeal.

(Tr. 83-84) (italics added).

---

[5] In *Doyle v. Ohio*, 426 U.S. 610 (1976), the United States Supreme Court "held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who's been arrested and Mirandized to impeach the defendant." *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002) (citing *Doyle*, 426 U.S. at 619). During the post-conviction hearing, Colbert also referred to the potential *Doyle* violation issue as a Fifth Amendment issue. We note that a *Doyle* violation is a violation of the Fourteenth Amendment's Due Process Clause prohibition against fundamental unfairness, not a violation of the Fifth Amendment's privilege against self-incrimination. *See Sobolewski v. State*, 889 N.E.2d 849, 856 (Ind. Ct. App. 2008), *trans. denied*.

On June 8, 2015, the post-conviction issued an order denying Colbert's petition for post-conviction relief on all claims of ineffective assistance of trial and appellate counsel ("June 2015 Post-Conviction Order"). That same day, Colbert filed praecipe for withdraw of submission under Trial Rule 53.1 ("Trial Rule 53.1 motion"). In the meantime, Colbert filed a notice of appeal and started an appeal from the post-conviction court's June 2015 Post-Conviction Order. In August 2015, the Indiana Supreme Court granted Colbert's Trial Rule 53.1 motion, ordered Judge Craney to vacate her June 2015 Post-Conviction Order, and appointed the Honorable Peter R. Foley as special judge.

Thereafter, the post-conviction court held an additional hearing on November 6, 2015. The parties stipulated that the post-conviction court could review the transcript of the October 31, 2014 hearing in order to rule on Colbert's post-conviction petition relief claims. The post-conviction court also allowed Colbert to question Trial Counsel Manning regarding a bond issue. Thereafter, the post-conviction court issued an order denying Colbert's petition for post-conviction relief on all claims of ineffective assistance of trial and appellate counsel. Colbert now appeals.

## Decision

At the outset, we note that Colbert has chosen to proceed pro se and that his appellate brief is not the model of clarity. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. Thus, pro se litigants are

bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id.* "We will not become a party's advocate, nor will we address arguments that are inappropriate, improperly expressed, or too poorly developed to be understood." *Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005), *trans. denied*.

[15]   Colbert appeals the post-conviction court's order denying post-conviction relief on his claims of ineffective assistance of trial and appellate counsel. Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal case citations omitted), *trans. denied.* Additionally, "[w]e will not reweigh the evidence or judge the credibility of the witnesses; we examine only the probative evidence and reasonable inferences that support the decision of the

post-conviction court." *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007), *reh'g denied*, *cert. denied*.

[16]   Turning to Colbert's post-conviction claims regarding ineffective assistance of counsel, we note that we apply the same standard of review to claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*. A claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*. "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*. "Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French*, 778 N.E.2d at 824. Therefore, if we can dismiss an ineffective assistance claim on the prejudice prong, we need not address whether counsel's performance was deficient. *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008).

### A. Trial Counsel

[17] On appeal, Colbert argues that his trial counsel rendered ineffective assistance by failing to object to the following evidence: (1) two police in-car videos (State's Exhibits 122 & 123); (2) the victim's testimony regarding his identification of Colbert; (3) four letters written by Colbert (State's Exhibits 115-118); and (4) evidence regarding his burglary conviction during both phases of his trial.[6]

[18] In regard to Colbert's ineffective assistance of trial counsel claims, the post-conviction court determined that Colbert had failed to meet his burden of establishing grounds for relief on these claims. We agree with the post-conviction court's determination.

[19] To demonstrate ineffective assistance of trial counsel for failure to object, a petitioner must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. *Kubusch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010), *reh'g denied*. Colbert, however, has failed to do so for each of his claims. Colbert has failed to specify what objection his trial counsel should have made to the evidence he now challenges, and he has failed to show that any such objections would have been sustained. Furthermore, Colbert has made absolutely no showing that there is a reasonable

---

[6] Colbert also appears to attempt to argue other ineffective assistance of trial counsel claims. These arguments are waived because he did not provide a cogent argument. *See* Ind. App. Rule 46(A)(8)(a). *See also Griffith v. State*, 59 N.E.3d 947, 958 n.5 (Ind. 2016) (noting that the defendant had waived his arguments by failing to provide cogent argument).

probability that, but for his trial counsel's alleged errors, the result of the proceeding would have been different. Accordingly, we affirm the post-conviction court's denial of post-conviction relief on Colbert's ineffective assistance of trial counsel claims. *See French*, 778 N.E.2d at 824 (holding that a petitioner's failure to satisfy either of the two prongs of an ineffective assistance of counsel will cause the claim to fail).

### B. Appellate Counsel

[20] Lastly, Colbert contends that the post-conviction court erred by denying him post-conviction relief on his ineffective assistance of appellate counsel claim. Wading through Colbert's brief, we find that the argument most resembling a cogent argument is Colbert's claim that Appellate Attorney Manning rendered ineffective assistance by failing to raise an appellate issue on direct appeal. Specifically, Colbert contends that Appellate Attorney Manning should have raised an appellate challenge to the trial court's denial of his mistrial motion made after a police officer testified and referenced Colbert's right to remain silent.[7]

---

[7] Colbert also appears to attempt to argue other ineffective assistance of appellate counsel claims. These arguments, however, are waived because he did not provide a cogent argument. *See* Ind. App. Rule 46(A)(8)(a). *See also Griffith*, 59 N.E.3d at 958 n.5 (noting that the defendant had waived his arguments by failing to provide cogent argument). Additionally, in regard to Colbert's claim that his appellate counsel was ineffective for not filing a petition for rehearing or transfer, we note that Colbert cannot show that he was prejudiced because he filed both of these petitions.

Ineffective assistance of appellate counsel claims "'generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well.'" *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013) (quoting *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)). Colbert argues that his appellate counsel rendered ineffective assistance because she failed to raise a challenge to the denial of his mistrial motion on appeal. Thus, his ineffective assistance of appellate counsel claims are based upon category (2).

"Because the decision regarding what issues to raise and what arguments to make is 'one of the most important strategic decisions to be made by appellate counsel,' ineffectiveness is very rarely found." *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind. 1999) (quoting *Bieghler*, 690 N.E.2d at 193), *reh'g denied*, *cert. denied*. "'Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable.'" *Id.* (quoting *Bieghler,* 690 N.E.2d at 194).

We need not, however, decide whether appellate counsel's performance was deficient because Colbert has not shown prejudice on this or any of his ineffective assistance of appellate counsel claims.[8] *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001) (explaining that it was not necessary to address the allegations of deficient performance where the petitioner had failed to establish

---

[8] We note, however, that Appellate Attorney Manning's testimony during the post-conviction hearing clearly shows that she made a strategic decision to exclude the mistrial issue in favor of the hearsay evidentiary issue.

prejudice and affirming the trial court's denial of post-conviction relief); *Coleman v. State*, 741 N.E.2d 697, 701 n.4 (Ind. 2000) (quoting *Strickland,* 466 U.S. at 697) (explaining that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed'"), *reh'g denied*, *cert. denied*.

[24] To succeed on his ineffective appellate counsel claim, "the prejudice-prong of *Strickland* require[d] [Colbert] to demonstrate a reasonable probability that, but for his counsel's errors, the result of his direct appeal would have been different." *See Martin v. State*, 760 N.E.2d 597, 600 (Ind. 2002) (citing *Strickland,* 466 U.S. at 694). Thus, to show prejudice on his ineffective appellate counsel claim regarding the lack of mistrial argument on direct appeal, Colbert was required to show that, had his appellate counsel raised that issue, this Court would have reversed the trial court's mistrial ruling and reversed Colbert's convictions.

[25] Colbert, however, has not shown that there is a reasonable probability that the result of his direct appeal would have been different had his appellate counsel raised the mistrial issue. Indeed, his brief contains a rambling recitation of evidence from trial and general references to cases, and it does not specifically show the prejudice necessary to meet the burden of his ineffective assistance of appellate counsel claim. *See Garrett*, 992 N.E.2d at 724 (explaining that the prejudice prong for the waiver of issues category of an ineffective assistance of appellate counsel claim requires an examination of whether the issues that appellate counsel failed to raise would have been clearly more likely to result in

reversal or an order for a new trial). Accordingly, we affirm the post-conviction court's denial of post-conviction relief on Colbert's ineffective assistance of appellate counsel claims.

[26] Affirmed.

Kirsch, J., and Riley, J., concur.