## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/18/2017, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jaron D. Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 18, 2017 <br><br> Court of Appeals Case No. <br> 18A02-1701-CR-169 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Linda Ralu Wolf, Judge <br><br> Trial Court Cause No. <br> 18C03-1602-F2-2 |

**Barnes, Judge.**

# Case Summary

Jaron D. Johnson appeals his conviction and sentence for Level 2 felony burglary with a deadly weapon. We affirm.

# Issues

The issues before us are:

I.    whether the trial court erred in admitting Johnson's post-arrest statements to police; and

II.   whether Johnson's seventeen-year sentence is inappropriate.

# Facts

On February 9, 2016, Heidi Cook was in a friend's home in Muncie and on a telephone call with Peggy Meadows when she heard a "big old boom" near the front door. Tr. pp. 207-08. Cook asked Meadows, who was her father's girlfriend, to call the police. Cook was pregnant and had two young children in the house with her.

Johnson and an unidentified accomplice had kicked open the front door of the house. Johnson wore a bandana over his face, and his accomplice wore a mask. The accomplice took Cook's cell phone and pointed an AR-15 semi-automatic rifle at the children and her. Suddenly, Johnson suffered an apparent seizure and collapsed. The accomplice demanded that Cook retrieve a safe from a bedroom and kept his rifle trained on the children. Cook complied. Once he had the safe, the accomplice removed a handgun from the unconscious Johnson's pocket and fled the scene.

[5] Cook ran outside with the children and encountered her father and Meadows, who had rushed to the scene. Meadows telephoned the police. Cook and her father went into the house to retrieve her coat and shoes. Her father approached Johnson's body and checked his condition. Johnson's eyes were open.

[6] Muncie Police Department officers arrived at the scene, ordered Johnson from the house, and took his statement. Before the interview, Johnson signed an acknowledgment and waiver of his *Miranda* rights. Johnson denied having an accomplice.

[7] On February 15, 2016, the State charged Johnson with Level 2 felony burglary with a deadly weapon. At the outset of trial, he moved to suppress his statement to police, asserting it violated his right against self-incrimination. At Johnson's jury trial, which commenced on November 28, 2016, the trial court redacted a portion of his statement, including the following responses: "I don't want to incriminate myself"; and "that sounds a little incriminating." *Id*. at 45. The trial court declined to redact Johnson's response, "I don't want to answer that." *Id.* at 45-46. The State moved to admit Johnson's redacted statement, and the trial court admitted it into evidence over his objection.

[8] The jury found Johnson guilty as charged. In imposing sentence, the trial court cited the following as aggravating circumstances: (1) Johnson committed the offense while released on bond; (2) his history of juvenile delinquency; and (3) his pattern of prior juvenile adjudications involving handguns–carrying a

handgun without a license and dangerous possession of a firearm. The trial court found the following mitigating circumstances: (1) Johnson was only eighteen years of age; (2) the instant offense was his first felony; (3) his substantial family support regarding his rehabilitation; (4) he had spiraled into drug and alcohol abuse after his mother's death when he was sixteen years of age; and (5) his favorable employment record as an inmate. The trial court sentenced Johnson to a term of seventeen years, ordering fourteen years executed and three years suspended to probation. Johnson now appeals.

# Analysis

## I. Admission of Post-Arrest Statements

[9] Johnson argues that the trial court abused its discretion in admitting evidence of his post-arrest silence. Specifically, he argues that the trial court improperly allowed the jury to hear post-arrest statements in which he expressly declined to answer questions for fear of self-incrimination. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. *Terry v. State,* 857 N.E.2d 396, 409 (Ind. Ct. App. 2006), *trans. denied.*

[10] Johnson's claim is based on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240 (1976). In *Doyle,* the United States Supreme Court held that "under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who has been arrested" and given *Miranda* warnings "to impeach the defendant." *Trice v. State,* 766 N.E.2d 1180, 1182 (Ind. 2002) (citing *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245). "*Miranda* warnings inform a person of his right to remain silent and

assure him, at least implicitly, that his silence will not be used against him." *Id.* at 1183 (quoting *Anderson v. Charles,* 447 U.S. 404, 407-08, 100 S. Ct. 2180, 2182 (1980)). *Doyle* is not limited solely to the use for impeachment purposes of a defendant's silence. *Teague v. State,* 891 N.E.2d 1121, 1125 (Ind. 2008) (citing *Wainwright v. Greenfield,* 474 U.S. 284, 291-92, 106 S. Ct. 634, 639 (1986)), *cert. denied.* "Rather, it also applies to the use of a defendant's silence as affirmative proof in the State's case in chief." *Id.*

[11] Even if the State used Johnson's post-arrest silence in violation of *Doyle*, such error was harmless. In the harmless error context, our supreme court has held that, in analyzing whether a *Doyle* violation is harmless beyond a reasonable doubt, we examine five factors: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court of an opportunity to grant a motion for mistrial or give a curative instruction. *Sobolewski v. State,* 889 N.E.2d 849, 857 (Ind. Ct. App. 2008), *trans. denied.*

[12] Here, the trial court permitted Johnson's statement to be introduced only after it was redacted to omit references to his refusal to answer police questions for fear of self-incrimination. *See* Tr. p. 45 ("I don't want to incriminate myself"; and "that sounds a little incriminating."). Therefore, the only references that the jury heard to Johnson's post-arrest silence were statements in which he expressed his general unwillingness to answer posed questions, (*i.e.*, "I don't

want to answer that.").  These unredacted, brief, and general references to Johnson's post-arrest silence pale in comparison to the ample evidence of his guilt.

[13]  During the jury trial, the State presented evidence that Johnson and his accomplice forcibly entered another person's dwelling intending to committing a crime inside; Johnson was armed and was wearing a bandana to obscure his face; and his masked and armed accomplice pointed a semi-automatic rifle at a pregnant woman and two young children and demanded the residents' safe. But for Johnson's apparent seizure and resulting unconsciousness, he too would have absconded with the safe, instead of being left behind at the scene, apprehended, and prosecuted.

[14]  Given the overwhelming evidence of Johnson's guilt, we conclude that it is clear beyond a reasonable doubt that error, if any, in the use of his post-arrest silence did not contribute to his conviction and was, therefore, harmless. *See Sobolewski,* 889 N.E.2d at 857.

## II.  Sentence

[15]  Johnson argues that his seventeen-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. Although Rule 7(B) does not require us to be extremely deferential to a trial court's sentencing decision, we still must give due consideration to the decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).  We also acknowledge the unique perspective that a trial court brings to its sentencing

decisions. *Id.* A defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Id.*

[16] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[17] Regarding the nature of the offense, Johnson—armed with a deadly weapon and wearing a bandana to hide his face—and another man kicked in the front door of another person's residence. Inside, Johnson's accomplice pointed a rifle at Cook, who was pregnant, and two minor children. Johnson's involvement in the crime was halted by a fortuitous seizure and his resulting unconsciousness. His accomplice fled with the residents' safe and Johnson's handgun, leaving Johnson behind.

[18] As for Johnson's character, he has a record of prior juvenile adjudications, each involving a deadly weapon. He committed the instant offense while he was released on bond. Inexplicably, he downplays the crippling effect of his involuntary seizure and emphasizes his resulting restraint – arguing that "his offense could have been much worse"; that "[he] himself did not brandish a weapon, and did not point it at anyone"; that none of the occupants of the house was injured during the burglary; and that he did not resist law enforcement on being apprehended. Appellant's Br. at 18. In light of Johnson's questionable character and the troubling circumstances of the burglary, his seventeen-year sentence—with three years ordered suspended to probation—is not inappropriate.

## Conclusion

[19] We conclude that error, if any, from the trial court's admission of Johnson's post-arrest statements amounted to harmless error. Johnson's seventeen-year sentence is not inappropriate. We affirm.

[20] Affirmed.

May, J., and Bradford, J., concur.